ZACHARY, Judge.
 

 *27
 
 Southeastern Installation, Inc. (defendant, with Cincinnati Insurance Company, defendants) appeals from an opinion and award of the North Carolina Industrial Commission ("the Commission"), finding defendants solely liable for workers' compensation medical and disability payments to Gurney Harris (plaintiff) that arose after 1 April 2014, as a result of plaintiff's injury on that date. On appeal, defendants argue that the Commission erred by failing to apportion liability for plaintiff's workers' compensation benefits between defendants and plaintiff's previous employer, Southern Commercial Glass, Inc. (appellee, with Auto Owners Insurance Company, appellees). We conclude that the Commission did not err in its Opinion and Award.
 

 I. Background
 

 The parties agree that plaintiff is entitled to workers' compensation medical and disability benefits for injury to his back arising from and occurring in the course of his employment. The controversy between the parties concerns the question of whether the Commission properly determined the liability for plaintiff's workers' compensation benefits.
 

 *28
 
 On 13 July 2010, plaintiff suffered a back injury while working for appellee at a job site in Georgia. Appellees accepted plaintiff's claim as compensable, and plaintiff received workers' compensation medical and disability benefits. After this injury, plaintiff returned to his home in Lexington, North Carolina, and on 30 November 2011, plaintiff and appellees agreed to a change of jurisdiction from Georgia to North Carolina. Upon his return to Lexington, plaintiff consulted his family physician for treatment of low back pain radiating into his left leg. Plaintiff's family doctor recommended an MRI, which showed a disc protrusion on the left at L4-L5. Plaintiff's family doctor referred plaintiff to Dr. Tadhg O'Gara, an orthopedist at Wake Forest Baptist Medical Center, for treatment of back pain. Plaintiff treated conservatively with Dr. O'Gara, undergoing physical therapy and an epidural steroid injection. However, plaintiff continued to experience low back pain and on 7 October 2010, Dr. Ishaq Syed performed a left L4-L5 microdiscectomy surgery on plaintiff.
 

 Dr. Syed reviewed an MRI conducted on 1 February 2011, and after finding no recurrent disc herniation, he referred plaintiff back to Dr. O'Gara. Plaintiff's last appointment with Dr. O'Gara was on 28 June 2011, at which time plaintiff reported having symptoms that "come and go" and that decreased with the use of anti-inflammatory medications. At this visit, Dr. O'Gara assessed plaintiff at maximum medical improvement with a fifteen percent (15%) permanent partial impairment rating to the back and permanent restrictions of lifting up to seventy-five (75) pounds.
 

 At some point after plaintiff's accident in July 2010, appellee terminated plaintiff's employment, although appellees continued to pay plaintiff workers' compensation benefits. In January 2012, plaintiff began working for defendant, at which time plaintiff informed defendant about his July 2010 work-related injury and his resultant workers' compensation claim. Plaintiff told defendant that he had undergone back surgery, that he might need another surgery, and that appellees were paying for all medical treatment related to his July 2010 injury. As of 17 July 2014, the date of the hearing on this matter, plaintiff was still employed by defendant, and appellee was no longer in business.
 

 Dr. Max Cohen, an orthopedic surgeon in Greensboro, North Carolina, has been plaintiff's authorized treating physician since 4
 
 *738
 
 May 2012. When plaintiff first consulted Dr. Cohen, he told Dr. Cohen about his prior injury and surgery, and reported that his post-operative pain, which he rated as a five on a scale of one to ten, was improving. At that meeting, Dr. Cohen noted that plaintiff's symptoms were "fairly mild" and that plaintiff could continue working full time. Plaintiff returned to
 
 *29
 
 Dr. Cohen on 25 July 2012, with complaints of back pain radiating into his left leg. Dr. Cohen ordered an MRI but continued plaintiff's release to work full time. A third MRI, obtained on 13 August 2012, showed evidence of the prior surgery at L4-L5 with recurrent/residual disc material protrusion abutting the traversing left L5 nerve root. Between September 2012 and April 2014, plaintiff was treated with pain medication, steroid injections, and medication patches. During this time, plaintiff experienced several instances of back pain that lasted for a day or more. However, plaintiff continued to work full time, sometimes as much as 70 hours a week, and continued to reject the suggestion of further surgery.
 

 On 1 April 2014, while plaintiff was working in New York City on a job for defendant, he bent over slightly and then was unable to straighten his back. Plaintiff experienced acute pain, and testified that the severity of the pain was such that it was all he could do to walk to his hotel shower and back to bed. Plaintiff remained in bed for several days until he returned to North Carolina. Upon returning to North Carolina, plaintiff consulted with Dr. Cohen on 11 April 2014. Following this visit, Dr. Cohen placed plaintiff out of work, effective 1 April 2014. Plaintiff did not work from 1 April 2014 until the date of the hearing on this matter.
 

 On 30 April 2014, Dr. Cohen requested authorization for plaintiff to undergo L4-L5 fusion surgery. On 5 May 2014, appellees confirmed that the surgery was authorized and that indemnity compensation would be paid from 1 April 2014. The surgery was scheduled for 19 May 2014; however, on 13 May 2014, appellees revoked their authorization and denied payment of compensation on the grounds that plaintiff had suffered a new injury on 1 April 2014, for which appellees were not liable. On 15 May 2014, plaintiff filed a motion seeking an order requiring appellees to pay for plaintiff's surgery. On 28 May 2014, former Deputy Commissioner Victoria Homick denied plaintiff's medical motion, and on 29 May 2014, former Deputy Commissioner Homick ordered that defendants be added as parties.
 

 Appellees and defendants each filed an Industrial Commission Form 61 denying plaintiff's claim for workers' compensation medical benefits related to his surgery. Defendants contended that plaintiff's need for surgery arose from the preexisting medical condition caused by his compensable injury in July 2010, and that appellees should be responsible for plaintiff's workers' compensation benefits. Appellees asserted that plaintiff suffered a new injury on 1 April 2014, and that defendants were liable for workers' compensation benefits related to the new injury. The case was heard on 17 July 2014 before Deputy Commissioner Chrystal Redding Stanback. On 18 March 2015, Deputy Commissioner Stanback issued a
 
 *30
 
 second amended opinion and award, holding that plaintiff did not suffer a compensable injury on 1 April 2014, that plaintiff's need for surgery was caused by his 13 July 2010 injury, and that appellees were solely liable for plaintiff's workers' compensation medical and disability benefits.
 

 Appellees appealed to the Full Commission, which heard the case on 5 August 2015. On 3 September 2015, the Commission, in an opinion and award issued by Commissioner Danny L. McDonald with the concurrence of Industrial Commission Chairman Andrew T. Heath and Commissioner Charlton L. Allen, reversed Deputy Commissioner Stanback's opinion and award. The Commission found that plaintiff suffered an injury by accident as a result of a specific traumatic incident occurring on 1 April 2014; that this accident materially aggravated his back condition; and that defendants were solely liable for plaintiff's workers' compensation benefits. Defendants noted a timely appeal from the Commission's opinion and award to this Court.
 

 II. Standard of Review
 

 It is long established that this Court reviews the opinions and awards of the
 
 *739
 
 Industrial Commission in order to determine "(1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact."
 
 Clark v. Wal-Mart
 
 ,
 
 360 N.C. 41
 
 , 43,
 
 619 S.E.2d 491
 
 , 492 (2005) (citation omitted). The " '[Industrial] Commission is the sole judge of the credibility of the witnesses and the [evidentiary] weight to be given their testimony.' "
 
 Adams v. AVX Corp
 
 .,
 
 349 N.C. 676
 
 , 680,
 
 509 S.E.2d 411
 
 , 413 (1998) (quoting
 
 Anderson v. Lincoln Construction Co
 
 .,
 
 265 N.C. 431
 
 , 433-34,
 
 144 S.E.2d 272
 
 , 274 (1965) ). "The Full Commission may refuse to believe certain evidence and may accept or reject the testimony of any witness. Furthermore, '[t]he Commission's findings of fact are conclusive on appeal if supported by competent evidence ... even if there is evidence which would support a finding to the contrary.' "
 
 Freeman v. Rothrock
 
 ,
 
 202 N.C.App. 273
 
 , 275-76,
 
 689 S.E.2d 569
 
 , 572 (2010) (citing
 
 Pitman v. Feldspar Corp
 
 .,
 
 87 N.C.App. 208
 
 , 216,
 
 360 S.E.2d 696
 
 , 700 (1987), and quoting
 
 Sanderson v. Northeast Construction Co
 
 .,
 
 77 N.C.App. 117
 
 , 121,
 
 334 S.E.2d 392
 
 , 394 (1985) ). We review the Commission's conclusions of law
 
 de novo
 
 .
 
 Griggs v. Eastern Omni Constructors
 
 ,
 
 158 N.C.App. 480
 
 , 483,
 
 581 S.E.2d 138
 
 , 141 (2003).
 

 III. The Full Commission's Resolution of Factual Disputes in this Case
 

 The parties are in agreement on the general factual and procedural history of this case, including the fact that on 1 April 2014, plaintiff experienced back pain after bending slightly in the course of performing his
 
 *31
 
 job duties. The parties disagree sharply, however, as to the proper characterization and legal significance of this incident. The evidence offered by the parties at the hearing and relied upon in support of their appellate arguments reflects this dispute. Therefore, the legal issues raised on appeal are best understood in the context of the Commission's resolution of the evidentiary inconsistencies on this issue, in addition to its interpretation of the applicable legal principles.
 

 Defendants assert that during the years following plaintiff's July 2010 injury, he suffered from recurring episodes of back pain, some of which required him to miss work, and that the incident on 1 April 2014 was no different in nature or degree from the earlier instances of back pain that plaintiff had experienced. Defendants' argument that they are not liable for plaintiff's workers' compensation benefits is premised upon their contention that the competent record evidence does not support a finding or conclusion that plaintiff suffered a new compensable injury by accident on 1 April 2014. In support of their position, defendants cite excerpts from plaintiff's testimony in which plaintiff minimized the significance of the back injury he experienced on 1 April 2014, and on testimony from Dr. Cohen acknowledging that plaintiff had experienced back pain prior to 1 April 2014.
 

 Defendants also place great emphasis on testimony elicited from Dr. Cohen in response to a hypothetical question posed by defense counsel "based on [plaintiff's] testimony." Defendants asked Dr. Cohen to assume, hypothetically, that the Commission found the facts to be as defendants contended, based on plaintiff's testimony that the incident on 1 April 2014 was simply another instance of the "exact same pain" he had previously experienced. Given those facts, defendants asked Dr. Cohen to assign percentages to the relative contribution to plaintiff's need for surgery arising from plaintiff's prior injury and from the injury on 1 April 2014. In response, Dr. Cohen testified that under that hypothetical set of facts, plaintiff's 2010 injury contributed 70% to his condition in 2014, while plaintiff's 1 April 2014 incident contributed 30% to his need for surgery. However, as discussed below, the Commission did not adopt defendants' position in its findings of fact, rendering defendants' hypothetical question of little relevance to our analysis.
 

 In contrast, the appellees' position is that plaintiff experienced an injury by accident as a result of a specific traumatic incident occurring on 1 April 2014. Appellees' argument is supported by Dr. Cohen's testimony, which was based upon his examination of plaintiff on 11 April 2014, his review of an MRI conducted shortly thereafter, and his
 
 *32
 
 experience
 
 *740
 
 in reviewing "thousands" of MRIs. Dr. Cohen testified to the following observations:
 

 1. When Dr. Cohen saw plaintiff on 11 April 2014, plaintiff presented with a "significant change" in his symptoms. Compared to plaintiff's prior physical examinations, plaintiff now had a "profound weakness" in his left leg.
 

 2. Prior to 1 April 2014, plaintiff had never needed or asked to be written out of work. Dr. Cohen had no knowledge that plaintiff had ever missed work due to back pain and, if he had, Dr. Cohen had not authorized it.
 

 3. Dr. Cohen reviewed four MRIs performed in July 2010, February 2011, August 2012, and April 2014. The first three showed the expected results of his back surgery. However, the April 2014 MRI
 
 for the first time
 
 showed a left foraminal and left lateral disc herniation at L4-L5. Dr. Cohen testified that "there has certainly been an injury to cause this."
 

 4. Although plaintiff's health care providers had discussed the possibility of further surgery with plaintiff several times after July 2010, it was only after the 1 April 2014 incident that plaintiff wanted the surgery. In this regard, plaintiff testified that "after that moment, I was through. I was done. I needed the surgery after that."
 

 Dr. Cohen then testified that his opinion, to a reasonable degree of medical certainty, was that the incident on 1 April 2014 caused "further injury to the L4-5 disc, resulting in a large recurrent disc hernia on the left at L4-5, which ultimately resulted in the need for repeat surgery" and that he could "say with medical certainty that the herniated discs likely resulted from" the 1 April 2014 incident.
 

 The Commission was thus presented with conflicting evidence as to whether, on 1 April 2014, plaintiff suffered a new compensable injury by accident resulting from a specific traumatic incident. The Commission resolved this question in favor of appellees, as evidenced by the following findings of fact:
 

 22. While working at a job site for [defendants] in New York on April 1, 2014, plaintiff bent over slightly to slide a door panel[.] ... Plaintiff testified that he could not get back up once he bent over. Plaintiff informed his supervisor of the occurrence and some co-workers helped plaintiff back to the hotel where they were staying. Plaintiff
 
 *33
 
 testified that he could not work after this event but remained in his hotel for four or five days until the job was completed. Plaintiff testified that the severity of the pain was such that it was all he could do to get to his hotel shower and back to the room.
 

 23. Upon returning to North Carolina, plaintiff contacted Dr. Cohen's office and obtained an appointment for April 11, 2014. At that appointment, plaintiff informed Dr. Cohen that he aggravated his back ten days earlier such that he could not move his back. As noted by Dr. Cohen in his clinical assessment, plaintiff "was bent over and slid a box on the ground and felt his back 'catch.' " Since that event, plaintiff had been unable to return to work. Plaintiff relayed an interest in surgery to Dr. Cohen for the first time, and Dr. Cohen ordered an updated MRI to assess surgical options. Dr. Cohen also excused plaintiff from work pending reevaluation.
 

 24. Compared to the February 2011 MRI, the MRI of April 27, 2014 showed the development of a left L4-L5 foraminal to lateral disc protrusion effacing the left lateral recess, deflecting the traversing nerve roots, and narrowing the left foramen. Dr. Cohen noted plaintiff's pain severely affected his quality of life such that he was unable to work. Dr. Cohen further noted that plaintiff recently developed profound left lower extremity weakness and wanted to pursue surgical options. Dr. Cohen wrote plaintiff out of work pending surgery.
 

 ...
 

 26. Plaintiff testified that it was his understanding he was out of work due to the pending surgery with Dr. Cohen, not because he could not work. However, Dr. Cohen's medical note of April 30, 2014 states, "presently, [plaintiff] remains disabled from gainful employment."
 

 ...
 

 *741
 
 28. In a post-hearing deposition, [appellees] tendered Dr. Cohen as a medical expert in the field of orthopedic surgery without objection from the other parties. Dr. Cohen testified that the changes seen on plaintiff's lumbar spine MRI obtained in August 2012 were typical of what he
 
 *34
 
 would expect to see in someone who had undergone a discectomy. Dr. Cohen testified that from the time he began treating plaintiff in 2012 until he presented on April 11, 2014, plaintiff maintained a diagnosis of radiculitis and post-laminectomy syndrome representing the previous microdiscectomy. However, Dr. Cohen testified that when plaintiff returned on April 11, 2014, "there had been a significant change in his symptoms" and "[h]e was in such bad shape that he wanted to entertain pursuing surgery, which was something that he in the past had wanted to avoid." Dr. Cohen testified that plaintiff related his significant symptomatic change to an event at work that aggravated his underlying back condition.
 

 29. Dr. Cohen testified that the updated MRI obtained in April 2014 showed a large, recurrent disc herniation on the left at L4-L5, which he described as "a significant change compared to the previous studies." Dr. Cohen testified that, while there is some degree of speculation as to causation, it was his opinion, to a reasonable degree of medical certainty, that plaintiff suffered further injury to the L4-L5 lumbar spine on April 1, 2014, which resulted in his need for a repeat surgery. He based this opinion on plaintiff's profound increase in symptoms that came on suddenly as a result of the work event of April 1, 2014, along with the material change in plaintiff's lumbar spine seen on the April 2014 MRI as compared to prior studies.
 

 30. Dr. Cohen testified that plaintiff already had an unhealthy disc from his 2010 injury and prior surgery and that medical history set plaintiff up for the subsequent injury he sustained on April 1, 2014. Dr. Cohen testified that he did not envision the work event of April 1, 2014 to have been an extremely strenuous activity, but that it didn't have to be in order to cause the disc herniation plaintiff suffered.
 

 31. Dr. Cohen rendered an opinion, to a reasonable degree of medical certainty, and the Commission so finds, that the work event of April 1, 2014 caused injury to plaintiff's L4-L5 disc and materially aggravated his pre-existing back condition. Dr. Cohen clarified that, although plaintiff was a surgical candidate for a lumbar fusion as early as September 14, 2012, plaintiff's symptoms were still tolerable to him
 
 *35
 
 at that time and he electively deferred surgery. However, there was a clear difference in plaintiff's symptoms subsequent to April 1, 2014, such that plaintiff could no longer work and wanted to promptly pursue surgery. Dr. Cohen opined that, considering plaintiff's back condition, he would relate seventy percent (70%) of plaintiff's need for back surgery to his July 2010 injury and thirty percent (30%) to the aggravation of that original injury during the April 1, 2014 work event. Dr. Cohen further testified that plaintiff was zero percent (0%) disabled prior to April 1, 2014, as far as wage earning capacity, but plaintiff was one hundred percent (100%) disabled after April 1, 2014.
 

 32. The preponderance of the evidence in view of the entire record establishes that, on April 1, 2014, plaintiff suffered a "specific traumatic incident" ... during a judicially cognizable time period, and that specific traumatic incident qualifies as a compensable injury by accident as defined by the North Carolina Workers' Compensation Act and applicable case law. The Commission further finds that plaintiff sustained a material aggravation of his July 2010 back condition as a result of the specific traumatic incident that arose out of and in the course of his employment with [defendants] on April 1, 2014.
 

 ...
 

 34. The preponderance of the evidence in view of the entire record establishes that plaintiff became temporarily and totally disabled from work as of April 1, 2014 as a result of his aggravation injury to the back.
 

 As discussed above, the Commission is charged with determination of the credibility
 
 *742
 
 and weight to be given to conflicting testimony. In this case, the Full Commission's findings and conclusions were based largely upon Dr. Cohen's testimony rather than upon plaintiff's testimony regarding his recollection of the degree to which the incident on 1 April 2014 differed from earlier episodes.
 

 IV. Apportionment of Liability
 

 Defendants argue first that the Commission erred by failing to apportion liability for plaintiff's workers' compensation benefits between defendants and appellees. Defendants contend that the Commission was required to apportion liability, based upon (1) Dr. Cohen's response
 
 *36
 
 to defendants' hypothetical question and (2) this Court's opinion in
 
 Newcomb v. Greensboro Pipe Co
 
 .,
 
 196 N.C.App. 675
 
 ,
 
 677 S.E.2d 167
 
 (2009). We do not find either of these arguments persuasive.
 

 In
 
 Newcomb
 
 , as in the present case, the plaintiff suffered successive back injuries while working for two different employers. The Commission found that the medical evidence did not establish the degree to which the plaintiff's injuries and disability arose from each accident, and held that the two employers were jointly and severally liable. On appeal, this Court held that the Commission had not abused its discretion based upon the facts of the case, and stated that:
 

 [H]ad the Full Commission been able to determine what percentage of plaintiff's disability stemmed from his 2003 compensable injury and what percentage stemmed from his 2006 compensable injury, then the Full Commission would have apportioned responsibility for the disability benefits accordingly. Because the Full Commission could not so determine, both employers became responsible for the full amount, resulting in joint and several liability. The Full Commission's opinion and award is supported by reason and shows the exercise of good judgment and consideration of equitable principles.
 

 Newcomb
 
 ,
 
 196 N.C.App. at 682
 
 ,
 
 677 S.E.2d at 171
 
 . Defendants assert that this statement constitutes a definitive ruling that the Commission "is required" to apportion liability whenever it is possible to determine the respective percentages of causation. However, this Court's holding in
 
 Newcomb
 
 was that the Commission did not abuse its discretion by ruling that the employers were jointly and severally liable where the percentages were not apparent.
 
 Newcomb
 
 did not hold that the Commission would have erred as a matter of law if, in a hypothetical case with different facts, the Commission had failed to apportion liability. Moreover, such a statement would be
 
 dicta,
 
 given that it was not necessary for resolution of the issues presented in
 
 Newcomb
 
 .
 

 Secondly, contrary to defendants' arguments, in the present case the Commission did not assign numerical or percentage values to the relative contributions of plaintiff's 2010 and 2014 injuries to plaintiff's need for surgery or his temporary total disability. The Commission noted Dr. Cohen's testimony, which was given in response to defendants' hypothetical question, that 70% of plaintiff's need for surgery was due to his 2010 injury and only 30% was caused by the incident on 1 April 2014. However, the Commission did not make a finding adopting this testimony as a
 
 *37
 
 fact. "This Court has long held that findings of fact must be more than a mere summarization or recitation of the evidence[.]"
 
 Lane v. American Nat'l Can Co
 
 .,
 
 181 N.C.App. 527
 
 , 531,
 
 640 S.E.2d 732
 
 , 735 (2007) (citing
 
 Hansel v. Sherman Textiles
 
 ,
 
 304 N.C. 44
 
 , 59,
 
 283 S.E.2d 101
 
 , 109 (1981) ),
 
 disc. review denied
 
 ,
 
 362 N.C. 236
 
 ,
 
 659 S.E.2d 735
 
 (2008). " '[R]ecitations of the testimony of each witness
 
 do not
 
 constitute findings of
 
 fact
 
 by the trial judge, because they do not reflect a conscious choice between the conflicting versions of the incident in question which emerged from all the evidence presented.' "
 
 Winders v. Edgecombe Cty. Home Health Care
 
 ,
 
 187 N.C.App. 668
 
 , 673,
 
 653 S.E.2d 575
 
 , 579 (2007) (emphasis in original) (quoting
 
 In re Green
 
 ,
 
 67 N.C.App. 501
 
 , 505 n.1,
 
 313 S.E.2d 193
 
 , 195, n.1 (1984) ). Thus, the Commission's statement that Dr. Cohen had "opined" that he could relate 70% of plaintiff's need for back surgery to his 2010 injury does not constitute a finding by the Commission that it was adopting these percentages as fact.
 

 Moreover, Dr. Cohen's testimony was elicited in response to a question asking Dr.
 
 *743
 
 Cohen to assume that the Commission would find the facts to be in accord with plaintiff's testimony. However, the Commission did not find, as defendants contended, that the incident on 1 April 2014 was essentially identical to many prior instances of back pain experienced by plaintiff. Instead, the Commission adopted Dr. Cohen's opinion, which was offered to a reasonable degree of medical certainty, that plaintiff's need for surgery in 2014 arose from a specific injury on 1 April 2014. Defendants never asked Dr. Cohen what percentages he would assign based on Dr. Cohen's own testimony and medical records. Nor did defendants ask for Dr. Cohen's opinion based on the assumption that the Commission would resolve the factual inconsistencies in favor of appellees. Because Dr. Cohen's testimony was premised on an assumption that did not come to pass-that the Commission would resolve the parties' factual dispute in favor of defendants-the percentages to which Dr. Cohen testified cannot be applied to the facts as found by the Commission.
 

 We conclude that
 
 Newcomb
 
 did not hold that, as a matter of law, the Commission is required to apportion liability in every case in which the percentage of contribution of injuries that a claimant suffers while working for two different employers may be determined. Further, in this case the Commission did not make a finding on this issue, but simply noted Dr. Cohen's testimony in response to defendants' hypothetical question. Finally, Dr. Cohen's testimony was predicated on the hypothetical assumption that the Commission would find that the 1 April 2014 incident was no different from plaintiff's earlier episodes of back pain.
 

 *38
 
 Given that the Commission found to the contrary, Dr. Cohen's testimony would not support a finding as to the percentages of causation based on plaintiff's having suffered a new injury on 1 April 2014.
 

 V. The Commission's Analysis of Causation and Material Aggravation
 

 Defendants argue next that the Commission "applied erroneous legal standards regarding material aggravation and causation." Specifically, defendants contend that (1) the Commission erred by citing
 
 Moore v. Federal Express
 
 ,
 
 162 N.C.App. 292
 
 ,
 
 590 S.E.2d 461
 
 (2004), in support of its conclusion that the incident on 1 April 2014 materially aggravated plaintiff's prior back injury; (2) the Commission's conclusion that plaintiff's condition was causally related to a new injury was "based on legally incompetent medical testimony"; and (3) the Commission erred in its application of the
 
 Parsons
 
 presumption to the facts of this case. We conclude that defendants' arguments lack merit.
 

 A. Commission's Conclusion on Material Aggravation of Plaintiff's Condition
 

 In Conclusion of Law No. 6, the Commission stated in relevant part that:
 

 The Commission concludes that plaintiff suffered a specific traumatic incident on April 1, 2014 as a result of the work assigned by [defendants], which aggravated his preexisting back condition and is, therefore, compensable.
 
 N.C. Gen. Stat. § 97-2
 
 (6) ;
 
 Moore v. Fed. Express,
 

 162 N.C.App. at 297
 
 ,
 
 590 S.E.2d at
 
 465 ;
 
 Click
 
 [
 
 v. Pilot Freight Carriers
 
 ,] 300 N.C. [164,] 167-68, 265 S.E.2d [389,] 391 [ (1980) ].
 

 Defendants argue that the Commission erred by citing
 
 Moore
 
 in support of this conclusion of law, on the grounds that
 
 Moore
 
 "does not apply to pre-existing, work-related conditions" and that the analysis in
 
 Moore
 
 "assumes that the underlying condition is not related to a compensable event[.]"
 
 Moore
 
 , however, addressed the material aggravation of a prior
 
 work-related
 
 condition.
 
 Moore
 
 does not address the distinction posited by defendants, and did not state that its holding applied only to, or was based on the assumption of, a pre-existing non-work-related condition. Defendants' argument on this issue is without merit.
 

 B. Commission's Conclusions Regarding the 1 April 2014 Incident
 

 Defendants argue next that the Commission "improperly concluded that Plaintiff's condition arose from a new specific traumatic incident or accident on 1 April 2014[.]" We disagree.
 

 *39
 
 Defendants contend that the Commission "erred as a matter of law by using only findings of onset of pain to conclude that a
 
 *744
 
 specific traumatic incident occurred." However, as set out above, the Commission's conclusion that plaintiff suffered a specific traumatic incident on 1 April 2014 was based on more than the fact that the incident caused plaintiff to experience pain. The Commission found that "Dr. Cohen rendered an opinion, to a reasonable degree of medical certainty, and the Commission so finds, that the work event of April 1, 2014 caused injury to plaintiff's L4-L5 disc and materially aggravated his pre-existing back condition." Thus, the Commission's conclusion was based on expert medical testimony, and not merely the temporal connection between the incident on 1 April 2014 and the "onset of pain."
 

 Defendants also argue that the Commission improperly relied upon Dr. Cohen's testimony, on the grounds that it was based on speculation. Defendants correctly note that "[a]lthough medical certainty is not required, an expert's 'speculation' is insufficient to establish causation."
 
 Holley v. ACTS, Inc
 
 .,
 
 357 N.C. 228
 
 , 234,
 
 581 S.E.2d 750
 
 , 754 (2003). We conclude, however, that defendants have inaccurately characterized Dr. Cohen's testimony and his expert opinion as mere speculation.
 

 Defendants' argument is based primarily upon selected excerpts from Dr. Cohen's testimony. Defendants contend that Dr. Cohen "actually agree[d] that his testimony was speculative[.]" Our review of Dr. Cohen's deposition, however, indicates that Dr. Cohen testified that, notwithstanding the degree of speculation inherent in any medical diagnosis, he believed to a reasonable degree of medical certainty that plaintiff's condition arose from a new injury on 1 April 2014 as opposed to simply the gradual progression of his back condition arising from his July 2010 injury. The testimony cited by defendants was elicited during defendants' cross-examination of Dr. Cohen, during which defendants pressed Dr. Cohen to concede that it was impossible to state with absolute certainty whether plaintiff's condition arose from the incident on 1 April 2014. As demonstrated in the following excerpt, Dr. Cohen acknowledged that certainty was impossible, but testified that, based on his experience with many patients and having reviewed "thousands" of MRIs, he had reached the conclusion that plaintiff's condition was not simply the result of a gradual deterioration:
 

 DEFENDANTS' COUNSEL: Now, there was no MRI of the lumbar spine taken between August of 2012 and April of 2014.
 

 DR. COHEN: Correct.
 

 *40
 
 DEFENDANTS' COUNSEL: And the MRI doesn't tell us when the disc further herniated. Correct?
 

 DR. COHEN: Correct.
 

 ...
 

 DEFENDANTS' COUNSEL: I mean, it doesn't tell us whether there was some acute event or whether it was all progression.
 

 DR. COHEN: Correct.
 

 ...
 

 DEFENDANTS' COUNSEL: But it's still your testimony that-well, let me put it this way: Is it your opinion that the disc was completely stable, in the exact same condition from August of 2012 until April 1st of 2014, when it burst out due to this incident, or that there was probably progression in the meantime?
 

 DR. COHEN: Well, I don't know. I'm speculating here, but just from seeing thousands and thousands of patients and MRI scans, ... I would not expect that degree of herniation that we were seeing on that 2014 MRI scan to be asymptomatic. But again, it possibly could be, but I would not expect it[.] ... It appears to me that it's more than just a slow progression, but, again, you are correct in saying that I can't say that with certainty, but just my previous experience tells me that there was some acute change in the disc.
 

 On redirect examination, Dr. Cohen reiterated his opinion, to a reasonable degree of medical certainty, that plaintiff's need for surgery arose from a specific incident on 1 April 2014:
 

 APPELLEES' COUNSEL: Now, certainly I believe-please correct me, but I heard you saying that there's-on cross-examination, there is a degree of speculation involved in this. Is that correct?
 

 DR. COHEN: Yes.
 

 *745
 
 APPELLEES' COUNSEL: That you certainly aren't with [plaintiff] or any of your patients on a day-to-day basis. Is that correct?
 

 *41
 
 DR. COHEN: Yes.
 

 APPELLEES' COUNSEL: You have to go by what they're telling you on these medical records.
 

 DR. COHEN: Correct.
 

 APPELLEES' COUNSEL: And in this case, we can also go by what [plaintiff] is telling the Court at [the] hearing ... (Reading) "I couldn't work, couldn't work. It was all I could do to get to the shower and back." Based on this testimony, based on your medical records, based on your recollection, did the April 1, 2014, incident make him surgical (sic)?
 

 DR. COHEN: Yes.
 

 APPELLEES' COUNSEL: Did it materially aggravate his condition?
 

 DR. COHEN: Yes.
 

 APPELLEES' COUNSEL: Did it materially increase his pain complaints?
 

 DR. COHEN: Yes.
 

 APPELLEES' COUNSEL: Did it decrease his range of motion?
 

 DR. COHEN: Yes.
 

 APPELLEES' COUNSEL: Did the MRI taken after that April 1, 2014, [incident] have new objective findings?
 

 DR. COHEN: Yes.
 

 APPELLEES' COUNSEL: And were those the nerve impingement you described earlier?
 

 DR. COHEN: The enlargement of the disc, herniation, and the nerve root impingement.
 

 APPELLEES' COUNSEL: These are all your opinions to a reasonable degree of medical certainty?
 

 DR. COHEN: Yes.
 

 We conclude that although Dr. Cohen candidly acknowledged that he could not offer a medical opinion to a degree of absolute certainty
 
 *42
 
 that entirely removed all speculation, Dr. Cohen's opinion, to a
 
 reasonable
 
 degree of medical certainty, was that plaintiff had experienced a new injury on 1 April 2014 that materially aggravated plaintiff's prior back condition. In this regard, we note the Commission's Finding of Fact No. 29, which states that:
 

 29. Dr. Cohen testified that the updated MRI obtained in April 2014 showed a large, recurrent disc herniation on the left at L4-L5, which he described as "a significant change compared to the previous studies." Dr. Cohen testified that, while there is some degree of speculation as to causation, it was his opinion, to a reasonable degree of medical certainty, that plaintiff suffered further injury to the L4-L5 lumbar spine on April 1, 2014, which resulted in his need for a repeat surgery. He based this opinion on plaintiff's profound increase in symptoms that came on suddenly as a result of the work event of April 1, 2014, along with the material change in plaintiff's lumbar spine seen on the April 2014 MRI as compared to prior studies.
 

 Based upon our review of the entire transcript of Dr. Cohen's deposition, we conclude that Dr. Cohen's opinion was not based on mere speculation, and that the Commission did not err by relying in part upon Dr. Cohen's testimony for its findings and conclusions.
 

 C. The
 
 Parsons
 
 Presumption
 

 Finally, defendants argue that the Commission erred by stating in Conclusion of Law No. 7 that because plaintiff "sustained a new work-related injury by accident as the result of a specific traumatic incident on April 2, 2014, arising out of his employment with [defendant], application of the
 
 Parsons
 
 presumption is not applicable in this case." We conclude that even assuming that this conclusion was erroneous, it does not require reversal, given that the Commission also stated in the alternative the results of its application of the
 
 Parsons
 
 presumption.
 

 In
 
 Parsons v. Pantry, Inc
 
 .,
 
 126 N.C.App. 540
 
 , 542,
 
 485 S.E.2d 867
 
 , 869 (1997), this Court held that after a workers' compensation claimant meets the initial burden of proving the compensability of an injury, there arises a presumption that further medical treatment is directly related to the compensable injury. " 'The employer may rebut the presumption with evidence that the medical treatment is not directly related to the compensable injury.' "
 
 Miller v. Mission Hosp., Inc
 
 .,
 
 234 N.C.App. 514
 
 , 519,
 
 760 S.E.2d 31
 
 , 35 (2014) (quoting
 
 *746
 

 Perez v. Am. Airlines/AMR Corp
 
 .,
 
 174 N.C.App. 128
 
 , 135,
 
 620 S.E.2d 288
 
 , 292 (2005) ). Thus, the issue to
 
 *43
 
 which
 
 Parsons
 
 is generally applied is the compensability of a claimant's injury. In this case, the parties agree that plaintiff is entitled to workers' compensation benefits, and disagree only as to how the liability for these benefits should be determined.
 

 In Conclusion of Law No. 7, the Commission also stated that:
 

 Assuming
 
 arguendo
 
 that
 
 Parsons
 
 is applicable, the Commission concludes that [appellees] successfully rebutted the
 
 Parsons
 
 presumption based upon the expert medical opinion of Dr. Cohen, and that plaintiff failed to satisfy his burden of proof once it shifted back to him.
 

 Defendants concede that because the Commission applied the
 
 Parsons
 
 presumption despite its conclusion that
 
 Parsons
 
 was not applicable to this case, "a reversal on this issue may not change the outcome for [defendants]." Defendants nonetheless ask this Court to address this issue "to provide clarity for future matters." However, "[a]s this Court has previously pointed out, it is not a proper function of courts 'to give advisory opinions, or to answer moot questions, or to maintain a legal bureau for those who may chance to be interested, for the time being, in the pursuit of some academic matter.' "
 
 Martin v. Piedmont Asphalt & Paving
 
 ,
 
 337 N.C. 785
 
 , 788,
 
 448 S.E.2d 380
 
 , 382 (1994) (quoting
 
 Adams v. North Carolina Department of Natural and Economic Resources
 
 ,
 
 295 N.C. 683
 
 , 704,
 
 249 S.E.2d 402
 
 , 414 (1978) ). Because the Commission stated its ruling applying the
 
 Parsons
 
 presumption, we are not required to determine the merits of its conclusion that
 
 Parsons
 
 did not apply on the facts of this case, and we decline to entertain it as a hypothetical question.
 

 For the reasons discussed above, we conclude that the Industrial Commission did not err and that its Opinion and Award should be
 

 AFFIRMED.
 

 Judge STEPHENS and Judge McCULLOUGH concur.