JEFFREY H. NEWCOMB, Employee, Plaintiff v. GREENSBORO PIPE COMPANY, Employer, SELECTIVE INSURANCE COMPANY, Carrier, Defendants-Appellants, and MABE TRUCKING COMPANY, Employer, THE PHOENIX FUND, INC., IN REHABILITATION, Carrier, Defendants-Appellees

No. COA08-783

(Filed 5 May 2009)

**Workers' Compensation— successive injuries—disability benefits—apportioned where possible—joint liability otherwise**

The Industrial Commission did not abuse its discretion in a workers' compensation case by apportioning disability benefits between a current and a prior back injury, and by assigning joint and several liability for those disability benefits that the doctor could not determine stemmed from one injury or the other. If the General Assembly had intended to adopt a "last injurious expo-

sure" rule for accidental injuries as well as occupational disease, it would have done so explicitly.

Appeal by defendants-appellants from opinion and award entered 10 March 2008 by Commissioner Laura Kranifeld Mavretic, for the Full Commission. Heard in the Court of Appeals 28 January 2009.

*Rudisill, White & Kaplan, P.L.L.C., by Bradley H. Smith, for defendants-appellants.*

*Jones, Hewson & Woolard, by R.G. Spratt III, for defendants-appellees.*

ELMORE, Judge.

Greensboro Pipe Company and its insurance carrier, Selective Insurance Company (together, Greensboro Pipe), appeal from an opinion and award entered 10 March 2008 by the Full Commission in favor of Jeffrey H. Newcomb (plaintiff). For the reasons stated below, we affirm the opinion and award.

The Full Commission found the following relevant facts, which the parties do not challenge on appeal and which are therefore binding on this Court. *Koufman v. Koufman,* 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). On 5 June 2003, plaintiff sustained a compensable injury to his back while employed as a truck driver at Greensboro Pipe. Plaintiff saw Dr. Jeffrey C. Beane on 10 June 2003, who diagnosed plaintiff with a large, broad-based disc herniation at L5-S1, as well as an annular tear at L4-5. Dr. Beane performed a surgical microdiskectomy at L5-S1 and eventually placed plaintiff at maximum medical improvement on 24 November 2003, assessing him with a fifteen percent partial impairment rating to the back. Plaintiff continued to have chronic back pain after the surgery. By June 2004, plaintiff was seeing Dr. Beane for back pain, left leg pain, right buttock pain, and right leg pain down to his heel. Dr. Beane noted that plaintiff suffered from spondylosis and epidural fibrosis at L5-S1 and non-compressive disc protrusion with effacement in the lateral recess and moderate central canal stenosis at L4-5.

On 26 July 2004, plaintiff began working at Mabe Trucking Company (Mabe Trucking)[1] as a load coordinator, a desk job that required no heavy lifting. On 17 March 2005, Dr. Beane saw plaintiff

---

1. Mabe Trucking's insurer, Phoenix Fund, Inc., In Rehabilitation, is included here.

for chronic right lower extremity radicular pain, numbness, and tingling. Dr. Beane kept plaintiff out of work from 26 April 2005 until 12 June 2005 because plaintiff could not even perform his desk job. A 5 June 2005 lumbar meylogram and CT scan showed a herniation at L4-5 on the left and a protrusion at L5-S1 on the left with a 6 millimeter retrolisthesis at that level. Dr. Beane offered to perform either decompression or lumbar fusion surgery, but plaintiff declined.

On 12 June 2005, plaintiff was examined by Dr. Parish A. McKinney. He explained that he had returned to work because he could not afford to be out of work, but that he was still having back problems and that Dr. Beane wanted to perform another surgery. Dr. McKinney advised that plaintiff might require surgery within a month. On 29 July 2005, Dr. Beane's partner, Dr. Richard D. Ramos, performed repeat bilateral facet injections at L4-5 and L5-S1. On 16 August 2005, Dr. Ramos noted that plaintiff was "doing at least 95% better and that he was having minimal pain." However, plaintiff's pain returned in September 2005. Plaintiff periodically told his supervisor at Mabe Trucking that he was having ongoing back problems. Sometimes plaintiff missed work because of them.

On 23 January 2006, plaintiff was on his way to work with Mabe Trucking when he slipped on a tile floor and fell. The floor was wet because it was raining. Plaintiff went to the hospital later that day. Following increased pain and repeated visits to his various doctors, plaintiff was reporting pain on both his right and left sides by 8 March 2006. On 4 May 2006, Dr. Beane performed a microdiskectomy at L4-5 and L5-S1 on the left. Drs. Beane and Ramos kept plaintiff out of work continuously until 29 December 2006. Dr. Beane then assigned restrictions of no prolonged sitting or standing, no unsupported or repetitive bending at the waist, and no lifting more than ten pounds.

Dr. Beane testified that plaintiff's second accident aggravated plaintiff's underlying back condition and precipitated his need for surgery. Dr. Beane could not apportion a certain percentage of plaintiff's condition between the two accidents. The Full Commission found that plaintiff's 4 May 2006 surgery "was due to a combination of the accidents that he sustained on June 5, 2003 and January 23, 2006" and that the L4-5 and L5-S1 herniations "were proximately caused by the accident of June 5, 2003." Plaintiff reached maximum medical improvement on 29 December 2006, and Dr. Beane indicated that plaintiff had returned to his pre-January 2006 baseline. Dr. Beane imposed nearly the same restrictions on plaintiff's work as he had following the 5 June 2003 accident.

The Full Commission concluded that plaintiff was unable to work as a practical matter because of his vocational background and Dr. Beane's restrictions. The Full Commission determined that plaintiff "was totally disabled from any employment from May 21, 2004 to June 3, 2004, June 16, 2004 to July 25, 2004, and April 26, 2005 to June 12, 2005, as a proximate result of the accident he suffered with Greensboro Pipe on June 5, 2003." It also determined that plaintiff "was totally disabled from any employment from February 6, 2006 to February 19, 2006 and February 22, 2006 and continuing as a proximate result of a combination of the injuries suffered in the accident with Greensboro Pipe on June 5, 2003 and the accident with Mabe Trucking on January 23, 2006." Finally, the Full Commission determined that "[t]he medical evidence presented does not show the relative contribution to plaintiff's injuries and disability resulting from the June 5, 2003 or January 23, 2006 incidents. Therefore, apportionment is not possible and both carriers shall be jointly and severally liable for payment of plaintiff's compensation."

The Full Commission also made the following relevant findings of fact, which Greensboro Pipe now challenges:

6. As a proximate result of the combination of the compensable accidents on June 5, 2003 and January 23, 2006, plaintiff has been disabled from work and is entitled to temporary total disability benefits at a rate of $389.75 per week from February 6, 2006 to February 19, 2006, and from February 22, 2006 and continuing until he returns to work or until further order of the Commission. N.C. Gen. Stat. §97-29[.]

7. While plaintiff has reached his pre-January 2006 baseline and his current restrictions are essentially the same as they were before the accident on January 23, 2006, he has not returned to work. Equity dictates that both defendant-employers are equally liable for the payment of plaintiff's ongoing temporary total disability benefits. However, Greensboro Pipe and Selective Insurance Company would be prejudiced by paying half of plaintiff's compensation at the higher rate that is attributable to plaintiff's employment with Mabe Trucking. Accordingly, Greensboro Pipe and Selective Insurance Company shall pay compensation to plaintiff at a weekly rate of $173.64 (half of $347.29), and Mabe Trucking and Phoenix Fund, Inc., In Rehabilitation shall pay the remaining weekly rate of $216.11, so that plaintiff receives the full compensation rate of $389.75.

9. Defendants are jointly and severally responsible for all medical treatment incurred by the plaintiff since January 23, 2006 or to be incurred by plaintiff in the future as a result of his compensable back injuries. *Royce v. Rushco Food Stores*, 139 N.C. App. 322, 533 S.E.2d 284 (2000).

The Full Commission ordered Mabe Trucking and Greensboro Pipe to pay disability benefits consistent with the conclusions of law above. Greensboro Pipe now appeals the opinion and award.

As a preliminary matter, we note that our "review is limited to a consideration of whether there was any competent evidence to support the Full Commission's findings of fact and whether these findings of fact support the Commission's conclusions of law." *Ard v. Owens-Illinois*, 182 N.C. App. 493, 496, 642 S.E.2d 257, 259 (2007) (quotations, citations, and emphasis omitted). Here, Greensboro Pipe did not challenge any of the findings of fact, making them binding on appeal. Thus, our examination is limited to whether these findings of fact support the conclusions of law.

We also note that our Supreme Court has dictated that the Full Commission award "proper and equitable compensation" and "has no discretion to make an improper or inequitable award. What constitutes a 'proper and equitable award' calls for the exercise of judgment and balancing." *Little v. Penn Ventilator Co.*, 317 N.C. 206, 218, 345 S.E.2d 204, 212 (1986).

The abuse of discretion standard of review is applied to those decisions which necessarily require the exercise of judgment. The test for abuse of discretion is whether a decision is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision. The intended operation of the test may be seen in light of the purpose of the reviewing court. Because the reviewing court does not in the first instance make the judgment, the purpose of the reviewing court is not to substitute its judgment in place of the decision maker. Rather, the reviewing court sits only to insure that the decision could, in light of the factual context in which it is made, be the product of reason.

*Id.* (quotations and citations omitted).

Greensboro Pipe's sole argument on appeal is that the findings of fact do not support the conclusions of law because the Full Commis-

sion applied the wrong legal standard. Greensboro Pipe frames the issue as follows:

> The legal issue before this Court is whether the "last injurious exposure" rule, the rule of apportionment[,] or some variation of these rules should apply when determining the liability of multiple employers and/or insurers for total disability and medical benefits when an employee sustains a compensable injury which aggravates a pre-existing work-related [injury] sustained with a prior employer or insurer.

Greensboro Pipe argues that the Full Commission should have applied the "last injurious exposure" rule, which it describes as

> provid[ing] that the insurer on the risk at the time of the last injury is fully liable for any disability following the last date of injury, and is applied even if the last injury would have been significantly less severe but for the presence of the pre-existing injury.

(Citing generally to *Geathers v. 3V, Inc.*, 371 S.C. 570, 578, 641 S.E.2d 29, 33 (2007).) Under the rule as defined by Greensboro Pipe, Mabe Trucking and its insurer would be solely responsible for any disability benefits following the 23 January 2006 accident.

Although Greensboro Pipe correctly asserts that this is an issue of first impression, our Workers' Compensation case law and statutes are not entirely bereft in the area of apportionment. The General Assembly adopted the "last injurious exposure" rule with respect to occupational disease, apportioning the entire liability for the employee's disability benefits to the employee's last employer. *See* N.C. Gen. Stat. § 97-57 (2007) ("In any case where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, which was on the risk when the employee was so last exposed under such employer, shall be liable."). However, the General Assembly did not adopt such a rule with respect to compensable injuries resulting from accidents. Instead, it adopted § 97-33, which calls for proration of a second disability award if an employee had already sustained permanent disability or injury at a previous job, preventing double recoveries. N.C. Gen. Stat. § 97-33 (2007) ("If any employee . . . has a permanent disability or has sustained a permanent injury . . . in another employment other than that in which he received a subsequent permanent injury by accident . . . he shall be entitled to compensation only for the

degree of disability which would have resulted from the later accident if the earlier disability or injury had not existed."). Although there is no equivalent rule with respect to temporary disability resulting from injury, § 97-33 is still instructive.

We also summarized the use of apportionment in Workers' Compensation cases as follows:

> North Carolina's Worker's [sic] Compensation Act contains two provisions for apportionment of disability awards: (1) N.C.G.S. § 97-33 (1991) (providing for prorating of a permanent disability award where employee sustained prior disability due to epilepsy, military service, or injuries in another employment); and (2) N.C.G.S. § 97-35 (1991) (providing for apportionment of permanent injury award when employee has previously incurred partial disability through loss of one of specific body parts). Apportionment also has been allowed by our Courts when a non-work-related disease or infirmity actually causes part of an employee's total disability. *Gray v. Carolina Freight Carriers, Inc.*, 105 N.C. App. 480, 487, 414 S.E.2d 102, 106 (1992) (citations omitted). However, apportionment is not permitted when an employee becomes totally and permanently disabled due to a compensable injury's aggravation or acceleration of the employee's nondisabling, pre-existing disease or infirmity. *Id.* at 485, 414 S.E.2d at 107. An employee is also entitled to full compensation for total disability without apportionment when the nature of the employee's total disability makes any attempt at apportionment between work-related and non-work-related causes speculative. *Harrell v. Harriet & Henderson Yarns*, 314 N.C. 566, 575, 336 S.E.2d 47, 52 (1985).

*Errante v. Cumberland County Solid Waste Management*, 106 N.C. App. 114, 119, 415 S.E.2d 583, 586 (1992).

It appears clear that the Full Commission did not abuse its discretion by apportioning those disability benefits that Dr. Beane could determine stemmed from one injury or the other, and by assigning joint and several liability for those disability benefits that Dr. Beane could not determine stemmed from one injury or the other. If the General Assembly had intended to adopt a "last injurious exposure" rule for accidental injuries as well as occupational disease, it would have done so explicitly. Although N.C. Gen. Stat. § 97-33 does not apply here because the disability benefits at issue relate to temporary total disability compensation rather than permanent disability com-

pensation, the General Assembly clearly chose not to apply the "last injurious exposure" rule when an employee suffers an accident at a subsequent employer after suffering a permanent injury at a prior employer. Finally, we have held that when the Industrial Commission cannot determine what percentage of a plaintiff's permanent disability is attributable to his compensable injuries, as opposed to non-work-related conditions, that plaintiff is entitled to full compensation without apportionment. *Id.* at 120, 415 S.E.2d at 586-87.

It is not apparent to us why the Full Commission should apply a different apportionment standard to cases of temporary disability than it does to cases of permanent disability. Here, as in *Errante*, the Full Commission could not determine what percentage of plaintiff's disability stemmed from his compensable 2006 injury and what percentage stemmed from a previous condition. We recognize that there is a difference between the *Errante* plaintiff's previous condition, which was unrelated to any employment, and this plaintiff's previous condition, which was related to his prior employment with Greensboro Pipe. Nevertheless, the reasoning is the same. In *Errante*, had the Full Commission been able to determine what percentage of the plaintiff's disability stemmed from his compensable injury, the employer would only have been responsible for that percentage of the disability benefits. However, the Full Commission could not make that determination, so the employer became responsible for the full amount because there was no other party to take responsibility; an employee cannot be jointly and severally responsible for his own compensable injury. Here, had the Full Commission been able to determine what percentage of plaintiff's disability stemmed from his 2003 compensable injury and what percentage stemmed from his 2006 compensable injury, then the Full Commission would have apportioned responsibility for the disability benefits accordingly. Because the Full Commission could not so determine, both employers became responsible for the full amount, resulting in joint and several liability.

The Full Commission's opinion and award is supported by reason and shows the exercise of good judgment and consideration of equitable principles. Accordingly, we affirm the order and award of the Full Commission.

Affirmed.

Judges BRYANT and CALABRIA concur.