IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-997

Filed: 17 July 2018

North Carolina Industrial Commission, I.C. Nos. 14-780510, 15-003172, and PH-4327

WARREN STIPPICH, Employee, Plaintiff,

v.

REESE'S TRANSIT, INC., Employer, RIVERPORT INSURANCE COMPANY, Carrier (BERKLEY ASSIGNED RISK SERVICES, Third-Party Administrator), and RONALD EVANS, Individually, Defendants.

Appeal by defendant from opinion and award entered 24 May 2017 by the North Carolina Industrial Commission. Heard in the Court of Appeals 4 April 2018.

*O'Malley Tunstall, PLLC, by Joseph P. Tunstall, III, for plaintiff-appellee.*

*Jordan Law Offices, P.A., by James F. Jordan and Sarah C. Blount, for defendant-appellees Reese's Transit, Inc. and Ronald Evans.*

*Brewer Defense Group, by Joy H. Brewer and Kenneth E. Menzel, for defendant-appellant Riverport Insurance Company.*

ELMORE, Judge.

Defendant Riverport Insurance Company ("Riverport") appeals from an opinion and award of the North Carolina Industrial Commission ("the Commission"), which concluded that Riverport is responsible for payment of all benefits due employee Warren Stippich ("plaintiff") for the injuries he sustained in a 6 October 2014 work-related automobile accident. On appeal, Riverport contends the Commission erred in finding and concluding (I) that plaintiff's current neck and lower

back conditions are related to the 2014 accident and (II) that plaintiff established ongoing disability as a result of the 2014 accident. In the alternative, Riverport argues (III) that liability for plaintiff's medical treatment should be split equally between Riverport and plaintiff's employer, defendant-appellee Reese's Transit, Inc. ("Reese's"). For the reasons stated herein, we affirm in part and reverse in part.

## Background

On 6 October 2014, plaintiff was injured in an automobile accident arising out of his employment with Reese's, which was insured by Riverport. On 15 January 2015, plaintiff was involved in a second automobile accident arising out of his employment with Reese's. However, at the time of the 2015 accident, Reese's had allowed its workers' compensation insurance coverage to lapse. Riverport thus denied a claim for plaintiff's 2015 accident on the grounds that Reese's lacked insurance coverage on that date, and it denied a claim for plaintiff's 2014 accident on the grounds that plaintiff's injuries were related only to the 2015 accident.

Plaintiff filed two Form 33 Requests for Hearing based on Riverport's denial of the two claims. Both claims were heard before Deputy Commissioner Adrian Phillips ("DC Phillips") on 17 November 2015, and evidence presented at the hearing tended to show the following.

Plaintiff was fifty-nine years old at the time of the 2014 accident and had various pre-existing conditions involving his shoulders, knees, left upper extremity,

and back. Plaintiff testified to having a low level of chronic back pain since as early as 1989, but he had not received any treatment for back pain in the six months preceding the 2014 accident, and he had no neck pain prior to October 2014. In August 2014, plaintiff began working as a driver for Reese's, where his employment consisted of transporting children to and from school.

On 6 October 2014, plaintiff was involved in a work-related accident when his vehicle was "T-boned" by another vehicle. Property damage was estimated at $10,000.00 to $12,000.00, and plaintiff's vehicle had to be towed from the scene. Plaintiff was treated at Johnston Medical Center the same day and reported pain in his neck, shoulders, right knee, and right hip.

On 1 November 2014, plaintiff returned to Johnston Medical Center complaining of pain in his neck, shoulders, lower back, and lower right extremity. Plaintiff reported that the pain had become more severe since the day of the accident, so much so that plaintiff could no longer work through the pain or sleep at night. No diagnoses were made at that time as to plaintiff's lower back, but he was diagnosed with neck pain and right knee pain. The very next day, plaintiff presented at the WakeMed Emergency Room and reported pain in his neck, shoulders, and lower back. Upon examination, plaintiff was diagnosed with back pain, right foot pain, and gout.

Plaintiff did not receive any further medical treatment from on or about 3 November 2014 through 7 January 2015. During that time, plaintiff drove for Reese's

on a limited basis due to his debilitating pain levels as well as the children's winter break from school.

On 8 January 2015, plaintiff presented at NextCare Urgent Care and reported having persistent neck pain since the 2014 accident. Plaintiff was diagnosed with cervicalgia and back pain, referred to an orthopaedist, and restricted from work for three days. Upon returning to work on 11 January 2015, plaintiff notified Reese's that he did not feel he could work through his pain any longer and thought he may become a danger to himself or the children if he continued to drive in his condition. Plaintiff agreed to temporarily continue his employment with Reese's until the company could locate a replacement driver.

On 15 January 2015—four days after his return to work and notice of intent to cease driving—plaintiff was involved in a second work-related accident. Plaintiff was sitting in his parked Chevrolet Suburban when a Lexus sedan "slid on ice and side-swiped the driver's side rear corner of plaintiff's bumper." The accident was low-impact in nature and resulted in minimal damage to the two vehicles, including a dent in the Suburban's rear bumper, scratched paint, and a broken tail light, all of which cost approximately $1,500.00 to repair. Plaintiff did not seek treatment for any injuries on the day of the second accident, which he described as a "fender-bender."

On 16 January 2015, plaintiff presented to Paul Becton, PA-C, with Raleigh Orthopaedic Clinic ("ROC") pursuant to a previously-scheduled appointment to address his ongoing pain from the 2014 accident. At that appointment, Mr. Becton diagnosed plaintiff with neck and back pain and prescribed various medications; he also restricted plaintiff from work for three weeks, to be followed by a three-week period of "work as tolerated." However, plaintiff did not return to work.

On 16 February 2015, plaintiff presented to Dr. Mark R. Mikles, an orthopaedic surgeon with ROC, who diagnosed plaintiff with cervical and lumbar spondylosis as well as acute-on-chronic neck and lower back pain. As to further treatment options, Dr. Mikles recommended plaintiff undergo a course of conservative treatment such as medication and physical therapy. A medical note from the February 2015 appointment indicates that Dr. Mikles restricted plaintiff from work "at this point" and instructed plaintiff to follow up with Dr. Mikles after he received the recommended conservative treatment. However, plaintiff never received that treatment, and he did not follow up with Dr. Mikles for approximately ten months. While Reese's continued paying plaintiff's salary from mid-January 2015 through May 2015, plaintiff did not return to work nor seek other employment at any time after the 2015 accident.

In the meantime, plaintiff presented on 28 April 2015 to Dr. David Herzig, a neurosurgeon, and on 21 September 2015 to Dr. Hsiupei Chen, a pain management

specialist. According to Dr. Herzig, plaintiff "basically declined" his offer for conservative treatment—which would have consisted of physical therapy, pain management, and medications—and seemed "infatuated" with having surgery. Dr. Chen likewise testified that plaintiff did not follow through with her recommendations for treatment, which would have included a lumbar discogram of his back as well as a steroid injection for his neck. Neither Drs. Herzig nor Chen addressed the issue of work restrictions for plaintiff.

At the November 2015 hearing before DC Phillips, plaintiff testified that he was not injured by, and that his pain had never increased as a result of, the 2015 accident. According to plaintiff, prior to the 2015 accident, a lot of his pain from the 2014 accident had "shaken out," and "all [the 2015 accident] did was wake everything that had kind of . . . calmed down."

On 7 December 2015, plaintiff returned to Dr. Herzig complaining of chronic lower back and neck pain, and he called Dr. Herzig two days later in an attempt to schedule surgery. Dr. Herzig ultimately discharged plaintiff from his practice due to plaintiff's insistence on having surgery despite Dr. Herzig's repeated recommendations against the same. On 14 December 2015, plaintiff followed up with Dr. Mikles for the first time since February and reported declining the conservative treatment offered by Drs. Herzig and Chen. Like Dr. Herzig, Dr. Mikles advised

plaintiff at his final appointment on 28 December 2015 that surgical intervention was not warranted, and he did not address the issue of work restrictions for plaintiff.

On 26 July 2016, DC Phillips entered an opinion and award concluding that plaintiff sustained a compensable aggravation of his neck and lower back conditions as a result of the 2015 accident, and that Reese's was liable to plaintiff for temporary total disability benefits as well as medical treatment. As to the issue of ongoing disability, DC Phillips concluded that plaintiff had failed to establish disability beyond 28 December 2015. Plaintiff appealed to the Full Commission.

On 24 May 2017, the Full Commission reversed DC Phillips' opinion and award, concluding: (1) plaintiff's pre-existing neck and lower back conditions were aggravated by the 2014 accident; (2) the 2015 accident resulted in, at most, a temporary flare-up of the conditions aggravated by the 2014 accident, and did not result in any new injury; (3) plaintiff established ongoing disability beginning 15 January 2015; and (4) Riverport is solely liable for all benefits due plaintiff as a result of the injuries he sustained in the 2014 accident. Commissioner Linda Cheatham dissented on the issue of ongoing disability, instead concluding that plaintiff failed to establish disability as of 28 December 2015 due to lack of medical or other competent evidence documenting plaintiff's work restrictions, as well as plaintiff's failure to search for work after 28 December 2015. Riverport appeals.

**Standard of Review**

Our review of an opinion and award of the Commission is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000); N.C. Gen. Stat. § 97-86 (2015). "Thus, on appeal, this Court 'does not have the right to weigh the evidence and decide the issue on the basis of its weight. The [C]ourt's duty goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). If the record does contain such evidence, the Commission's findings are conclusive on appeal, even if there is also evidence that would support contrary findings. *Id.* (citing *Jones v. Myrtle Desk Co.*, 264 N.C. 401, 402, 141 S.E.2d 632, 633 (1965)). However, the plaintiff is entitled to the benefit of every reasonable inference in his favor. *Id.* (citation omitted).

**Discussion**

On appeal, Riverport asserts the Commission erred in finding and concluding that plaintiff's current neck and lower back conditions are related to the 2014 accident. Riverport contends the evidence shows plaintiff suffered a "material aggravation" of those conditions—rather than a "temporary flare-up" as found by the Commission—as a result of the 2015 accident, "placing Reese's Transit solely on the

risk for plaintiff's medical treatment." Riverport also argues the Commission erred by finding and concluding that plaintiff established ongoing disability beyond 28 December 2015. In the alternative, Riverport contends that liability for plaintiff's medical treatment should be split equally between Riverport and Reese's.

I. The Commission did not err in finding and concluding that plaintiff's current conditions are attributable to the 2014 accident.

Riverport first argues the evidence of record demonstrates plaintiff sustained a material aggravation of his neck and back conditions as a result of the 2015 accident rather than the 2014 accident. Riverport contends plaintiff's own testimony shows that his pain as a result of the 2014 accident had subsided and returned to its "baseline pre-injury levels" prior to the 2015 accident, which then "aggravated" and "resurrected" plaintiff's pain. Riverport also asserts that the medical evidence shows plaintiff's pain never lessened or subsided after the 2015 accident, whereas plaintiff had been able to return to work after the 2014 accident. Thus, according to Riverport, the Commission erred in finding that plaintiff's current conditions are attributable to the 2014 accident.

"Our courts have consistently held that workers injured in compensable accidents are entitled to be compensated for all disability caused by and resulting from the compensable injury." *Heatherly v. Montgomery Components, Inc.*, 71 N.C. App. 377, 379, 323 S.E.2d 29, 30 (1984) (citations omitted). "The law in this state is that the aggravation of an injury . . . is compensable '[w]hen the primary injury is

shown to have arisen out of and in the course of employment, [and] every natural consequence that flows from the injury arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.' " *Id.* at 379–80, 323 S.E.2d at 30 (quoting *Roper v. J.P. Stevens & Co.*, 65 N.C. App. 69, 73, 308 S.E.2d 485, 488 (1983)). In other words, " '[w]hen a first cause produces a second cause that produces a result, the first cause is a cause of that result.' " *Id.* at 380, 323 S.E.2d at 30 (quoting *Petty v. Transport, Inc.*, 276 N.C. 417, 426, 173 S.E.2d 321, 328 (1970)).

As to plaintiff's testimony, Riverport specifically notes that in Finding of Fact 22, the Commission cites to plaintiff's testimony "that the increased pain after [the 2015 accident] subsided, such that he returned to the pain levels he developed following the [2014 accident]" in support of Finding of Fact 36. Riverport asserts that this testimony does not exist anywhere in the record, and that the pain plaintiff described as having "subsided" was the pain he experienced after the 2014 accident, but before the 2015 accident. Riverport further asserts that, contrary to Finding of Fact 22, the evidence shows plaintiff's pain never lessened or subsided after the 2015 accident. In regard to the medical evidence, Riverport emphasizes the Commission found that three physicians all opined that plaintiff's pre-existing neck and back conditions were aggravated by both the 2014 and 2015 accidents. Riverport argues

that because the Commission explicitly found that the 2015 accident aggravated plaintiff's conditions, it was error to hold Riverport solely liable for plaintiff's benefits.

Because the totality of the evidence supports the Commission's findings and conclusions as to a material aggravation of plaintiff's primary injuries, we disagree.

Here, plaintiff's testimony and the opinions of his treating physicians demonstrate that after the 2014 accident, plaintiff suffered from severe and constant pain in his neck and back, decreased mobility, difficulty sleeping, joint pain, muscle spasms and tingling, and tenderness in his neck, lower back, and right hip, and that all of these conditions "would still be continuing today with or without" the 2015 accident. Moreover, plaintiff had notified Reese's *prior to* the 2015 accident that he could not continue his employment due to his physical conditions. Thus, Riverport's arguments as to the evidence of plaintiff's pain levels following the 2014 and 2015 accidents are not persuasive.

Additionally, plaintiff was still in the course of his treatment for the 2014 accident when the 2015 accident occurred. The 2015 accident was low-impact in nature and resulted in minimal damage to the two vehicles involved. Plaintiff did not seek treatment for any injuries on the day of the 2015 accident, which he described as a "fender-bender." Plaintiff's physicians also testified that in their opinion, the 2015 accident would not have caused plaintiff the extensive pain he was in at that time and going forward. Finally, although Riverport correctly contends

that the aggravation of a primary injury is compensable, such compensability relates back to the primary injury, for which Riverport is solely liable. *See Heatherly*, 71 N.C. App. at 379, 323 S.E.2d at 30.

Because the Commission's findings and conclusions that plaintiff's current neck and back conditions are related to the 2014 accident are supported by at least some competent evidence in the record, we reject Riverport's argument and affirm this portion of the opinion and award.

II.  The Commission erred by finding and concluding that plaintiff established ongoing disability as a result of the 2014 accident.

Riverport next asserts the Commission erred in finding and concluding that plaintiff established ongoing disability as a result of the 6 October 2014 accident. Riverport contends (1) plaintiff is not disabled as a result of that accident, and (2) plaintiff is unable to establish disability beyond 28 December 2015. Because the record lacks medical or other competent evidence to support the finding that plaintiff has been totally unable to work since December 2015, we agree.

Disability is defined as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2015). In *Hilliard v. Apex Cabinet Co.*, our Supreme Court held that

> in order to support a conclusion of disability, the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned

> before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was *caused by* plaintiff's injury.

305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982) (emphasis added).

Under the three-pronged *Hilliard* test, the burden is on the employee to first show he is incapable of earning the same wages he had earned before the injury. *Id.*

> The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work[-]related injury, incapable of work in any employment, (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment, (3) the production of evidence that he is capable of some work but that it would be futile because of pre[-]existing conditions, i.e., age, inexperience, lack of education, to seek other employment, or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Prod. Distrib.*, 108 N.C. App. 762, 765–66, 425 S.E.2d 454, 457 (1993) (citations omitted).

Here, the Commission concluded plaintiff had established disability pursuant to the *Hilliard* test and the first method set forth in *Russell*—that is, through the production of medical evidence that he is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment. As to plaintiff's proving disability pursuant to *Hilliard* and *Russell*, the Commission found:

22. . . . . Prior to the [2014 accident], plaintiff [testified that he] could work through his pain; however, after that collision, he could no longer sleep, bend over, and felt unable to continue working due to increased pain levels.

23. Plaintiff also testified that his personal health insurance paid for his medical treatment in January and February 2015, but that coverage eventually ceased after he stopped working. While receiving medical treatment using his personal health insurance policy, plaintiff paid co-pays out-of-pocket, but he did not have enough personal funds to pay the co-pays required to attend physical therapy. . . . . Plaintiff testified that he had already received medical bills he could not pay and did not want to incur further debt by obtaining additional treatment he could not personally afford. The Commission finds plaintiff's testimony in this regard credible, and further finds plaintiff's reasons for not seeking additional medical treatment reasonable.

. . . .

33. Dr. Herzig deferred to Dr. Mikles as to plaintiff's capacity for work. Although Dr. Mikles was not directly asked about plaintiff's capacity for work during his deposition on February 29, 2016, Dr. Mikles testified that he wrote plaintiff out of work following an evaluation on February 16, 2015 and, when plaintiff returned for re-evaluation on December 7 and December 28, 2015, plaintiff demonstrated no significant change in his condition. Dr. Mikles testified that plaintiff's physical examinations were unchanged from prior evaluations, and he continued to recommend the conservative treatment measures previously given at the February 16, 2015 appointment.

34. At the hearing before [DC Phillips], plaintiff testified that his neck pain prevents him from sleeping, working in his yard, and performing the work he used to do. Plaintiff also testified that he is unable to work through his pain and is in need of further medical treatment. The

Commission finds plaintiff's testimony as to his pain levels and its effect on his activity levels and work capacity credible.

. . . .

37. The Commission further finds, based upon a preponderance of the evidence in view of the entire record, that plaintiff has been totally disabled from work in any capacity since his involvement in the [2015 accident]. Mr. Becton excused plaintiff from work as of January 16, 2015, and Dr. Mikles maintained this out-of-work status during follow-up on February 16, 2015. Dr. Mikles noted, "[plaintiff] was given a work note stating he is out of work at this point and will follow up once he has had the above treatments approved for further evaluation or workup if necessary." . . . . At the time of plaintiff's follow-ups with Dr. Mikles on December 14 and 28, 2015, plaintiff had not received any of the conservative pain management treatments that Dr. Mikles previously recommended, and his physical examination and conditions remained unchanged. Therefore, even though Dr. Mikles did not provide plaintiff with a new note excusing him from work at either the December 14 or 28, 2015 appointments, the Commission finds that plaintiff remained totally disabled from work in any capacity due to his pain levels and pending receipt of the conservative treatment measures recommended by Dr. Mikles.

38. . . . . [Plaintiff's] providers have recommended conservative pain management as the next course of care. Accordingly, the Commission finds that additional treatment for plaintiff's cervical spine and low back conditions is reasonably necessary to effect a cure, provide relief, and lessen his period of disability.

The Commission went on to conclude

6. . . . that plaintiff has presented medical evidence sufficient to establish total disability since his involvement

in the [2015 accident], pursuant to the first prong of *Russell*. Plaintiff received out-of-work notes from his medical providers on January 16, 2015 and February 16, 2015. The latter note, provided by Dr. Mikles, excused plaintiff from work until he received the conservative pain management treatment measures that Dr. Mikles recommended. Plaintiff had not received those treatment measures at the time of his follow-ups with Dr. Mikles on December 14 and 28, 2015, and his physical examination and conditions remained unchanged. Therefore, even though Dr. Mikles did not provide plaintiff with a new note excusing him from work at either the December 14 or 28, 2015 appointments, the Commission concludes, based upon the cumulative medical evidence entailed in Dr. Mikles' medical records and deposition testimony, that plaintiff remains totally disabled from work in any capacity due to his pain levels and pending receipt of the conservative treatment measures that Dr. Mikles has recommended. . . . . The Commission further concludes that the medical evidence, along with plaintiff's credible testimony as to his pain level, precludes him from work in any capacity at this time.

Based on these findings and conclusions regarding plaintiff's disability, it is apparent that the majority of the Commission interpreted Dr. Mikles' 16 February 2015 medical note as restricting plaintiff from *all work* until he received the recommended conservative treatment. However, the evidence of record does not support such an interpretation. Dr. Mikles' medical note did not indicate that plaintiff should remain out of work until he received the recommended conservative treatment; rather, the note instructed plaintiff to follow up with Dr. Mikles' office once he received the recommended treatment. Moreover, Dr. Mikles did not testify

that it was his intention for plaintiff to remain completely out of work until he received the recommended treatment.

In addition to Dr. Mikles, plaintiff presented to Drs. Herzig and Chen later in 2015. Dr. Herzig testified that plaintiff declined his offer for conservative treatment and seemed "infatuated" with having surgery. Dr. Chen likewise testified that plaintiff did not follow through with her recommendations for treatment. Neither Dr. Herzig nor Dr. Chen wrote out-of-work notes for plaintiff at any time, nor did either doctor recommend any specific work restrictions for plaintiff.

Plaintiff did not follow up with Dr. Mikles until December 2015—approximately ten months after his previous appointment. During this visit, plaintiff informed Dr. Mikles that he had declined conservative treatment offered by Drs. Herzig and Chen. Dr. Mikles, like Dr. Herzig, advised plaintiff that surgical intervention was not warranted. At his final appointment on 28 December 2015, Dr. Mikles recommended that plaintiff follow up with a pain management clinic or Dr. Herzig, but he did not address the issue of work restrictions for plaintiff.

In view of the entire record, as of 28 December 2015, none of plaintiff's treating physicians had ever instructed plaintiff to remain out of work indefinitely "pending receipt of conservative treatment measures." Moreover, any lack of conservative treatment at that point did not preclude plaintiff from at least searching for work, but there is no evidence in the record that plaintiff searched for work—or that a

search would have been futile due to pre-existing conditions—following his 28 December 2015 appointment with Dr. Mikles. Absent such a showing, plaintiff has failed to establish total disability pursuant to *Hilliard* and *Russell*.

Because the record is wholly devoid of medical or other competent evidence to support the finding that plaintiff has been totally unable to work since 28 December 2015, and because plaintiff has failed to meet his burden of showing he is incapable of earning wages, we hold that the Commission erred in concluding plaintiff established ongoing disability and in extending plaintiff's benefits beyond that date.

III.   Riverport is solely liable for plaintiff's medical treatment as a result of the 2014 accident.

Riverport argues in the alternative that "[b]ecause there is no specific testimony on the percentage of plaintiff's neck and back conditions caused by the October 2014 accident versus the January 2015 accident, apportionment is not appropriate and liability should be split equally" between Riverport and Reese's, "resulting in joint and several liability for plaintiff's medical treatment." Riverport relies on this Court's decision in *Newcomb v. Greensboro Pipe Co.*, 196 N.C. App. 675, 677 S.E.2d 167 (2009), to support its argument.

In *Newcomb*, the plaintiff suffered a work-related back injury arising out of his employment with the defendant-appellant; he was diagnosed with a disc herniation and underwent a microdiscectomy. *Id.* at 676, 677 S.E.2d at 167. The plaintiff

subsequently began working for a new employer, but he continued to receive treatment for his prior back injury. *Id.*

Three years later, the plaintiff sustained a second work-related injury when he slipped and fell while in the course of his new employment. *Id.* The plaintiff complained of increased pain, underwent another microdiscectomy, and was assigned work restrictions of no prolonged sitting or standing, no unsupported or repetitive bending, and no lifting over 10 pounds, which were nearly identical to the restrictions he had been assigned after the first accident. *Id.* at 677, 677 S.E.2d at 168.

The plaintiff's treating physician in *Newcomb* testified that the second accident had aggravated the plaintiff's underlying back condition and precipitated the need for repeat surgery, but he could not apportion a percentage of the plaintiff's condition between the two accidents. *Id.* As a result, the Commission determined that the plaintiff was unable to work due to his vocational background as well as the restrictions he had been assigned, and it concluded that the two employers were jointly and severally liable for payment of the plaintiff's benefits. *Id.* at 678, 677 S.E.2d 168–69. We affirmed. *Id.* at 682, 677 S.E.2d 171.

The facts of the instant case are readily distinguishable from those in *Newcomb*, where the second accident undoubtedly resulted in new injury, pain, and need for medical treatment. Here, the evidence shows that plaintiff's second accident was a "fender-bender" that did not result in any new injury, did not cause any new

pain that had not already been caused by the first accident, and did not require new medical treatment. Thus, because the evidence supports the Commission's finding and conclusion that the 2015 accident resulted in a mere "flare-up" of the conditions caused by the 2014 accident, we hold that the Commission did not err in declining to split liability for plaintiff's medical treatment between Riverport and Reese's.

## Conclusion

Because there is competent evidence to support the Commission's finding and conclusion that plaintiff's current neck and back conditions are attributable to the 2014 compensable injury by automobile accident, we affirm this portion of the Commission's opinion and award. However, the Commission's findings are insufficient to support its conclusion that plaintiff established disability after 28 December 2015. Accordingly, we reverse that portion of the Commission's opinion and award concluding plaintiff established ongoing disability and extending plaintiff's workers' compensation benefits beyond 28 December 2015. Lastly, we affirm the Commission's conclusion that Riverport is solely liable for plaintiff's medical treatment as a result of the 2014 accident.

AFFIRMED IN PART; REVERSED IN PART.

Judges TYSON and ZACHARY concur.