KBT Realty Servs., Inc. v. AppyCity, LLC, 2021 NCBC 47.

STATE OF NORTH CAROLINA

NEW HANOVER COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 4416

KBT REALTY SERVICES, INC., a
North Carolina Corporation;
MYREALTYAPP, INC., a North
Carolina Corporation; KIRKLAND E.
PUGH, and wife, JANINE N. PUGH;
TODD HEADLEY; REBECCA
BROWN; and TYSON EMERY,

　　　　　　　　Plaintiffs,

v.

APPYCITY, LLC, a North Carolina
Limited Liability Company; TIMOTHY
S. FIELDS; and MELISSA M. CRETE,

　　　　　　　　Defendants.

**ORDER AND OPINION ON
PLAINTIFFS' MOTION FOR
DEFAULT JUDGMENT**

1.　**THIS MATTER** is before the Court on the Motion for Default Judgment filed by Plaintiffs KBT Realty Services, Inc. ("KBT"), MyRealtyApp, Inc. ("MyRealty"), Kirkland E. Pugh ("Kirkland Pugh"), Janine N. Pugh ("Janine Pugh"), Todd Headley ("Headley"), Rebecca Brown ("Brown"), and Tyson Emery ("Emery") (together, "Plaintiffs") on 11 March 2021 (the "Motion"). (Pls.' Mot. for Default J., ECF No. 37 ["Mot."].)　For the reasons set forth herein, the Court **GRANTS in part** and **DENIES in part** the Motion.

> *Law Offices of G. Grady Richardson, Jr., P.C., by G. Grady Richardson, Jr. and Jennifer L. Carpenter, for Plaintiffs.*
>
> *Defendant Timothy S. Fields participated by audio, but not video, communication.  Defendants AppyCity, LLC and Melissa M. Crete did not participate.*

Robinson, Judge.

## I. PROCEDURAL BACKGROUND

2. Plaintiffs filed their Verified Complaint on 12 December 2019 (the "Complaint"), asserting several claims against Defendants AppyCity, LLC ("AppyCity"), Timothy S. Fields ("Fields"), and Melissa M. Crete ("Crete") (together, "Defendants"). (Verified Compl., ECF No. 5 ["Compl."].) Plaintiffs originally also asserted claims against The Education App, LLC and Jonathan P. Weiss, but Plaintiffs later dismissed all claims against those defendants with prejudice on 9 February 2021. (ECF No. 35.)

3. On 19 October 2020, Plaintiffs filed a Motion for Entry of Default against Defendants pursuant to Rule 55(a) of the North Carolina Rules of Civil Procedure (the "Rule(s)"), as well as a supporting Affidavit of Service. (Aff. of Serv., ECF No. 24; Mot. for Entry of Default, ECF No. 25.) By Order dated 12 November 2020, the Court entered default against Defendants based on Plaintiffs' Motion for Entry of Default and supporting Affidavit of Service (the "Default Order"). (Order on Mot. for Entry of Default, ECF No. 27 ["Default Order"].)

4. On 11 March 2021, Plaintiffs filed the Motion, which seeks entry of default judgment in favor of Plaintiffs and against Defendants pursuant to Rule 55(b). (Mot. 1.) In support of the Motion, Plaintiffs filed a brief and other evidence for the Court's consideration. (*See generally* Mot. Exs. A–C, ECF Nos. 37.1–.3; Br. in Supp., ECF No. 38; Br. in Supp. Exs. A–B, ECF Nos. 38.1–.2.)

5.     Although permitted to do so under Business Court Rule ("BCR") 7, Defendants did not file a responsive brief or any other document in opposition to the Motion, and to date, no Defendant has participated in this action, either individually or through counsel, with the exception of Fields, as addressed below.

6.     Following the expiration of the time for Defendants to respond to the Motion, the Court issued a Notice of Hearing on 25 March 2021, (ECF No. 40), and later issued a Notice of Rescheduled Hearing on 6 April 2021, (ECF No. 42), scheduling a video conference hearing on the Motion for 26 April 2021.[1]

7.     On 22 April 2021, an individual identifying himself as Fields contacted the Court's staff by telephone and requested that the Court permit him to participate in the video conference hearing on the Motion scheduled for 26 April 2021.  The caller provided the Court with an email address, and the Court sent an electronic invitation for the video conference hearing to that email address.

8.     On 26 April 2021, the Court held the scheduled video conference hearing on the Motion.  Plaintiffs were represented by their counsel during the hearing.  Meanwhile, an individual identifying himself as Fields called in to the hearing, but he did not participate by video.  After being placed under oath, Fields indicated that he and Crete are currently residents of Florida and that they were unaware that this action had been filed against them until now.  Fields also indicated that he opposed

---

[1] The Court directed Plaintiffs' counsel to serve upon Defendants by certified mail copies of the Notice of Hearing and the Notice of Rescheduled Hearing and to file affidavits attesting to such service.  Plaintiffs' counsel filed affidavits of service on 1 April 2021 and 14 April 2021, confirming that counsel served Defendants with copies of the two notices by certified mail addressed to their last known addresses.  (ECF Nos. 41, 43.)

the Motion. But as noted, no Defendant has filed any document with the Court to that effect, and the Court therefore considers the Motion uncontested pursuant to BCR 7.6.

9. The Motion is now ripe for resolution.[2]

## II. FINDINGS OF FACT[3]

10. The following findings of fact are derived from (1) the allegations in the Complaint, which are now deemed admitted by Defendants due to the entry of default against them, *see Bell v. Martin*, 299 N.C. 715, 721 (1980) ("When default is entered due to defendant's failure to answer, the substantive allegations raised by plaintiff's complaint are no longer in issue, and for the purposes of entry of default and default judgment are deemed admitted."); (2) the evidence submitted by Plaintiffs in support of the Motion; and (3) the Court's findings in the Default Order.

11. KBT is a North Carolina corporation with its principal place of business located in New Hanover County, North Carolina. (Compl. ¶ 1.) Its current and past owners include Kirkland Pugh, Janine Pugh, Brown, and Emery. (Compl. ¶¶ 3–5.)

12. MyRealty is a North Carolina corporation with its principal place of business located in New Hanover County. (Compl. ¶ 2.) The individual Plaintiffs

---

[2] After the hearing on the Motion, Plaintiffs filed a Motion for Attorneys' Fees, Costs and Expenses and Supplemental Filing on 30 April 2021 (the "Fees and Costs Motion"), which seeks recovery of their attorneys' fees, costs, and expenses incurred in pursuing this action against Defendants. (ECF No. 44.) The Court will enter a separate order on the Fees and Costs Motion.

[3] To the extent that any findings of fact are more properly considered conclusions of law, the Court intends for them to be considered as such, and vice versa. *See Sheffer v. Rardin*, 208 N.C. App. 620, 624 (2010).

formed MyRealty in furtherance of the transactions at issue in this litigation. (Compl. ¶¶ 45, 51.)

13. Kirkland Pugh, Janine Pugh, Brown, and Emery are citizens and residents of New Hanover County. (Compl. ¶¶ 3–5.) Headley is a citizen and resident of Miami-Dade County, Florida. (Compl. ¶ 6.)

14. AppyCity is a North Carolina limited liability company ("LLC") with its principal offices located in Pender County, North Carolina. (Compl. ¶ 7.)

15. Fields and Crete are citizens and residents of Pender County, as well as owners, managers, and agents of AppyCity. (Compl. ¶¶ 10–11, 16, 65.)

16. Plaintiffs are in the business of buying and selling real estate in the Cape Fear and Southeastern North Carolina coastal area. (Compl. ¶ 13.)

17. Plaintiffs do not have technological expertise, training, or knowledge beyond that of a normal end user. (Compl. ¶ 13.)

18. In the summer of 2015, Plaintiffs first learned through various media outlets that AppyCity was a local developer of mobile applications. (Compl. ¶ 18.) Then, in or around August 2015, Plaintiffs and Defendants began to discuss how their respective businesses could mutually benefit each other. (Compl. ¶ 19.)

19. Fields and Crete—acting on their own behalf and on behalf of AppyCity as its agents—made several false representations to Plaintiffs regarding the assets, value, technical expertise, and capabilities of Defendants. (Compl. ¶ 37.)

20.    Defendants knowingly made these false representations to Plaintiffs to induce them to invest in and purchase Defendants' mobile applications.  (Compl. ¶¶ 38, 113.)

21.    Although the Complaint alleges that *all* Plaintiffs entered into several contracts with AppyCity in reasonable reliance on Defendants' false representations, (Compl. ¶¶ 17, 39, 72), the evidence submitted by Plaintiffs in support of the Motion reveals that only *some* Plaintiffs entered into such contracts.  Specifically, Plaintiffs' evidence, (*see* Mot. Ex. A; Br. in Supp. Ex. A), shows only that KBT, MyRealty, and Headley entered into 36 separate contracts with AppyCity for the development and sale of mobile applications and paid for those contracts as follows:[4]

   a.  KBT entered into a total of 12 contracts with AppyCity, and KBT paid AppyCity a total amount of $41,000.00 for the 12 contracts.[5]

   b.  MyRealty entered into a total of 18 contracts with AppyCity, and MyRealty paid AppyCity a total amount of $46,400.00 for the 18 contracts.

   c.  Headley entered into a total of 6 contracts with AppyCity, and Headley paid AppyCity a total amount of $52,000.00 for the 6 contracts.

22.    Defendants never delivered any functional mobile applications to any Plaintiffs.  (Compl. ¶ 64, Mot. Exs. A & B.)

---

[4] The subsequent Fees and Costs Motion filed by Plaintiffs confirms in paragraphs 1 through 3 and 7 that only KBT, MyRealty, and Headley entered into contracts with AppyCity and made payments in connection with the contracts.

[5] The payments for the 12 contracts were made on behalf of KBT from accounts associated with Janine Pugh and Brown.  (Mot. Ex. A.)

23. On 12 December 2019, Plaintiffs commenced this action against Defendants. (Compl.)

24. On 20 December 2019, Plaintiffs served AppyCity with the Complaint and Summons by certified mail, return receipt requested, addressed to its registered agent. (Default Order ¶ 2b (citing Aff. of Serv. ¶¶ 1, 5, Ex. A).)

25. In December 2019, Plaintiffs attempted, without success, to serve Fields and Crete with the Complaint and Summons by certified mail, return receipt requested, addressed to Fields and Crete, respectively. (Default Order ¶ 2c (citing Aff. of Serv. ¶¶ 2–4, 6, Ex. B).)

26. In January 2020, Plaintiffs attempted, without success, to serve Fields and Crete with the Complaint and Summons at their last known addresses in Rocky Point, North Carolina, by private process server. (Default Order ¶ 2d (citing Aff. of Serv. ¶¶ 7–8, Ex. C).) The private process server was unable to locate Fields or Crete. (Default Order ¶ 2d (citing Aff. of Serv. ¶ 8).)

27. Following these unsuccessful attempts to serve Fields and Crete, Plaintiffs published a Notice of Service of Process by Publication addressed to Fields and Crete on 16 April 2020, 23 April 2020, and 30 April 2020 in *The Pender-Topsail Post & Voice*, a newspaper of general circulation in Pender County, North Carolina, the area where Plaintiffs believed Fields and Crete were last located. (Default Order ¶ 2e (citing Aff. of Serv. ¶ 9, Ex. D).) The Notice of Service of Process by Publication ran for three consecutive weeks in Pender County. (Default Order ¶ 2e (citing Aff. of Serv. ¶ 9).) The Court found in the Default Order that the Notice of Service of Process

by Publication met the requirements set forth in Rule 4(j1) and sections 1-597 and 1-598 of the North Carolina General Statutes for service of process by publication. (Default Order ¶ 3.)

28. The Court also found in the Default Order that the time for Defendants to respond to the Complaint had passed and that Defendants had not filed an answer or otherwise responded to the Complaint. (Default Order ¶ 4 (citing N.C.G.S. § 1A-1, Rule 12(a)).)

29. Based on the Court's finding that Defendants had failed to timely respond to the Complaint after having been properly served, the Court entered default in favor of Plaintiffs and against Defendants on 12 November 2020. (Default Order ¶ 5.)

## III. CONCLUSIONS OF LAW

30. For a default judgment order to be valid, there must be compliance with the procedural requirements set forth in Rule 55 and section 1-75.11 of the North Carolina General Statutes. *See Hill v. Hill*, 11 N.C. App. 1, 6–7 (1971).

### A. <u>Procedural Requirements</u>

31. As noted, the Court entered default against Defendants on 12 November 2020 upon a proper motion by Plaintiffs, thus complying with Rule 55. *See* N.C.G.S. § 1A-1, Rule 55(a)–(b).

32. With respect to section 1-75.11, this statute requires proof of (1) proper service of process upon Defendants and (2) personal jurisdiction over Defendants. *See* N.C.G.S. § 1-75.11. Based on the factual findings above in paragraphs 14 and 15 and 24 through 27, the Court concludes that Plaintiffs have presented sufficient proof that

they properly served Defendants with the Complaint and Summons and that the Court has personal jurisdiction over Defendants. Fields' participation and statements at the hearing on the Motion do not lead to a different conclusion.

33. Indeed, as a result of the entry of default against them, Defendants are deemed to have admitted the allegations in the properly verified Complaint, including the allegations that AppyCity is a North Carolina LLC and that Fields and Crete are citizens and residents of North Carolina—these admitted allegations permit the Court to exercise personal jurisdiction over Defendants. *See General Foods Corp. v. Morris*, 49 N.C. App. 541, 543 (1980) ("The verified complaint in this case alleges that defendant is a citizen and resident of North Carolina. This is sufficient for the court to obtain personal jurisdiction over defendant under G.S. 1A-1, Rule 55(b) and G.S. 1-75.11(1)."). Moreover, to date, Defendants have not moved to set aside the Court's entry of default against Defendants. *See Bell*, 299 N.C. at 721 (making clear that unless a defaulting defendant shows good cause for setting aside an entry of default, the defendant is deemed to have admitted the allegations contained in the complaint).[6]

34. Also, as reflected in the Default Order, Plaintiffs submitted ample evidence that they served Defendants with the Complaint and Summons using procedures allowed by North Carolina law. Therefore, Fields' assertion that he and Crete were not aware of this lawsuit, without more, fails to adequately rebut Plaintiffs' evidence.

---

[6] The Court need not consider whether good cause exists to set aside the entry of default in the absence of a proper motion seeking such relief. In any event, the Court concludes that the record in this action does not reveal any grounds for setting aside the entry of default.

35.     In sum, the Court concludes that there has been compliance with both Rule 55 and section 1-75.11.  The Court next addresses the claims for relief that Plaintiffs have asserted against Defendants.

**B.    Claims for Relief**

36.     Although Defendants are deemed to have admitted the allegations in the Complaint due to the entry of default against them, for the Court to enter default judgment against Defendants, the Complaint must state a cause of action.  *See Brown v. Cavit Scis., Inc.*, 230 N.C. App. 460, 467 (2013) ("A complaint which fails to state a cause of action is not sufficient to support a default judgment for plaintiff." (citation omitted)).

37.     At the hearing on the Motion, Plaintiffs' counsel represented that Plaintiffs only seek default judgment against Defendants based on Plaintiffs' claims for fraud and unfair and deceptive trade practices ("UDTP") under Chapter 75 of our General Statutes, N.C.G.S. § 75-1.1, *et seq.*  As such, the Court concludes that Plaintiffs have abandoned all other claims that they asserted against Defendants in the Complaint, and the Court will accordingly only consider whether the allegations in the Complaint sufficiently state claims for fraud and UDTP pursuant to Chapter 75.

### i.    *Fraud*

38.     "The essential elements of fraud are: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17 (1992) (cleaned

up).  "Additionally, reliance on alleged false representations must be reasonable." *Sullivan v. Mebane Packaging Grp., Inc.*, 158 N.C. App. 19, 26 (2003) (citation omitted).

39.    Applying these principles, and based on the factual findings above in paragraphs 16 through 22, the Court concludes that the Complaint adequately states a fraud claim against Defendants.  However, as discussed more fully below, only certain Plaintiffs have proven that they sustained damages from Defendants' fraud.

### ii.    UDTP

40.    To prevail on a UDTP claim brought under Chapter 75, "a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to [the plaintiff]." *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71–72 (2007) (citation omitted).

41.    The Court concludes that the Complaint sufficiently alleges that Defendants engaged in unfair or deceptive acts that injured Plaintiffs based on the same allegations that support the fraud claim.  *See, e.g.*, *Bhatti v. Buckland*, 328 N.C. 240, 243 (1991) ("The case law applying Chapter 75 holds that a plaintiff who proves fraud thereby establishes that unfair or deceptive acts have occurred.").  The Court further concludes that Defendants' conduct, as alleged in the Complaint, is the type that satisfies the "in or affecting commerce" element.  *See* N.C.G.S. § 75-1.1(b) (broadly defining "commerce" as "all business activities, however denominated," except for certain activities not applicable here); *see also Bhatti*, 328 N.C. at 245 ("The

apparent purpose behind the enactment of § 75-1.1 was the protection of the consuming public." (citation omitted)).

42. Thus, the Court determines that the Complaint adequately states a claim against Defendants for UDTP under Chapter 75. But as is the case with the fraud claim, only some Plaintiffs have shown that they sustained damages from Defendants' violation of Chapter 75.

## C. **Damages**

43. Having determined that the Complaint states claims against Defendants for fraud and UDTP under Chapter 75, the Court now considers the issue of damages.

### i. *Compensatory Damages*

44. Plaintiffs seek to recover compensatory damages from Defendants, jointly and severally.

45. "The objective of compensatory damages is to restore the plaintiff to his original condition or to make the plaintiff whole." *Watson v. Dixon*, 352 N.C. 343, 347 (2000). An award of damages is intended to give back to a successful plaintiff "that which was lost as far as it may be done by compensation in money." *Shera v. N.C. State Univ. Veterinary Teaching Hosp.*, 219 N.C. App. 117, 126 (2012) (emphasis omitted) (citation omitted).

46. With these principles in mind, the Court concludes that KBT, MyRealty, and Headley are entitled to recover compensatory damages from Defendants. Indeed, the admitted allegations in the Complaint and the evidence submitted by Plaintiffs in support of the Motion together show that KBT, MyRealty, and Headley were

fraudulently induced by Defendants to enter into several contracts with AppyCity and that they made certain payments to AppyCity in connection with the contracts at issue. KBT, MyRealty, and Headley have also demonstrated that they did not receive any of the mobile applications that were promised to them by Defendants.

47. On the other hand, Kirkland Pugh, Janine Pugh, Brown, and Emery have not presented any evidence upon which the Court can conclude that they sustained any damages in this action.

48. As a result, and consistent with the factual findings above in paragraphs 19 through 22, the Court finds and concludes that only KBT, MyRealty, and Headley are entitled to an award of compensatory damages as follows: KBT is entitled to an award of compensatory damages in the total amount of $41,000.00, MyRealty is entitled to an award of compensatory damages in the total amount of $46,400.00, and Headley is entitled to an award of compensatory damages in the total amount of $52,000.00. These compensatory damages awards will apply to all Defendants, jointly and severally. Further, the Court finds and concludes that KBT, MyRealty, and Headley are entitled to recover compensatory damages on their UDTP claim brought against Defendants pursuant to Chapter 75.[7] *See Wilder v. Hodges*, 80 N.C. App. 333, 334 (1986) ("When the same course of conduct supports claims for fraud and for an unfair or deceptive trade practice under Chapter 75, recovery can be had on either claim, but not on both.").

---

[7] The Court concludes that KBT, MyRealty, and Headley have "elected" to only recover on their UDTP claim based on their representations in the Fees and Costs Motion.

### ii.   *Treble Damages*

49.   Plaintiffs also seek to have their compensatory damages awards trebled pursuant to Chapter 75.

50.   The Court determines that KBT, MyRealty, and Headley are entitled to have their compensatory damages awards trebled, since the Court has determined that Defendants engaged in conduct proscribed by Chapter 75.  *See* N.C.G.S. § 75-16. Accordingly, KBT is entitled to an award of treble damages in the total amount of $123,000.00, MyRealty is entitled to an award of treble damages in the total amount of $139,200.00, and Headley is entitled to an award of treble damages in the total amount of $156,000.00.  These treble damages awards will apply to all Defendants, jointly and severally.[8]

### i.   *Interest on Judgments*

51.   Lastly, Plaintiffs seek interest on any judgments entered in their favor.  The Court concludes that Plaintiffs are indeed entitled to such interest by statute, as set forth below.  *See* N.C.G.S. § 24-5(b).

## IV.  CONCLUSION

52.   **THEREFORE**, for the foregoing reasons, the Court hereby **ORDERS**, **ADJUDGES**, and **DECREES** as follows.

   a. The Court **GRANTS** the Motion as to KBT, MyRealty, and Headley's claims against Defendants for fraud and UDTP under Chapter 75 and

---

[8]  Plaintiffs do not seek to recover punitive damages from Defendants.

thus **ENTERS DEFAULT JUDGMENT** in favor of KBT, MyRealty, and Headley and against Defendants on these two claims.

b. The Court **DENIES** the Motion in all other respects and thus **DISMISSES WITH PREJUDICE** all other claims asserted by any Plaintiff against any Defendant, except for the claims subject to the preceding paragraph.

c. KBT shall have and recover from Defendants, jointly and severally, damages in the amount of $41,000.00, which shall be trebled for an award in the total amount of $123,000.00. Of this total amount, interest shall accrue on the actual damages award ($41,000.00), at the legal rate, from the date this action was commenced until the judgment is satisfied, as calculated by the Clerk of Superior Court, and interest shall accrue on the remaining amount ($82,000.00), at the legal rate, from the date of entry of judgment until the judgment is satisfied, as calculated by the Clerk of Superior Court.

d. MyRealty shall have and recover from Defendants, jointly and severally, damages in the amount of $46,400.00, which shall be trebled for an award in the total amount of $139,200.00. Of this total amount, interest shall accrue on the actual damages award ($46,400.00), at the legal rate, from the date this action was commenced until the judgment is satisfied, as calculated by the Clerk of Superior Court, and interest shall accrue on the remaining amount ($92,800.00), at the legal rate, from the date

of entry of judgment until the judgment is satisfied, as calculated by the Clerk of Superior Court.

e. Headley shall have and recover from Defendants, jointly and severally, damages in the amount of $52,000.00, which shall be trebled for an award in the total amount of $156,000.00. Of this total amount, interest shall accrue on the actual damages award ($52,000.00), at the legal rate, from the date this action was commenced until the judgment is satisfied, as calculated by the Clerk of Superior Court, and interest shall accrue on the remaining amount ($104,000.00), at the legal rate, from the date of entry of judgment until the judgment is satisfied, as calculated by the Clerk of Superior Court.

f. Pursuant to Rule 55(c), the above judgments shall not be effective against Fields and Crete until KBT, MyRealty, and Headley each file with the Clerk of Superior Court a bond in an amount equivalent to half of the total damages awarded to each Plaintiff as follows:[9] KBT shall file a bond in the amount of $61,500.00, MyRealty shall file a bond in the amount of $69,600.00, and Headley shall file a bond in the amount of $78,000.00.

---

[9] This bond requirement only applies to the judgments entered against Fields and Crete, and not AppyCity, since Fields and Crete were served by publication while AppyCity was served by certified mail through its registered agent. *See* N.C.G.S. § 1A-1, Rule 55 ("When service of the summons has been made by published notice, no judgment shall be entered on default until the plaintiff shall have filed a bond, approved by the court, conditioned to abide such order as the court may make touching the restitution of any property collected or obtained by virtue of the judgment in case a defense is thereafter permitted and sustained[.]").

**SO ORDERED**, this the 9th day of August, 2021.


/s/ Michael L. Robinson

Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases