McFee v. Presley, 2022 NCBC 73.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

JACQUELINE S. MCFEE and
SAVAGE MCFEE, INC.,

        Plaintiffs,

v.

WILLIAM C. PRESLEY; BILL T.
STACKS; SABR LEME, INC.; C.
PRESLEY PROPERTIES, LLC;
STACKS HOLDING, INC.; and CPP
INTERNATIONAL, LLC,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 18665

**ORDER AND OPINION ON
PLAINTIFFS' MOTION FOR
DEFAULT JUDGMENT**

1. Plaintiffs Jacqueline S. McFee and Savage McFee, Inc. have moved for a default judgment against Defendants Bill T. Stacks, Sabr Leme, Inc., Stacks Holding, Inc., and CPP International, LLC ("CPP"). (*See* ECF No. 68.) For the reasons set forth below, the Court **GRANTS** the motion in part and **DENIES** it in part.

> *Terpening Law P.L.L.C., by William R. Terpening, Tomi M. Suzuki, and Shaefer A. Shepard, and Allan Law Firm, PLLC, by Albert P. Allan, for Plaintiffs Jacqueline S. McFee and Savage McFee, Inc.*
>
> *Johnston, Allison & Hord, P.A., by Kimberly J. Kirk and Katie D. Burchette, for Defendants William C. Presley and C. Presley Properties, LLC.*
>
> *No counsel appeared for Defendants Bill T. Stacks, Sabr Leme, Inc., Stacks Holding, Inc., and CPP International, LLC.*

Conrad, Judge.

## I. PROCEDURAL BACKGROUND

2. Plaintiffs initiated this action in November 2021. (*See* Compl., ECF No. 3.) Defendants William Presley and C. Presley Properties, LLC timely filed their answer.

(*See* Answer, ECF No. 87.)  Stacks, Sabr Leme, Stacks Holding, and CPP ("Defaulting Defendants") have not answered or otherwise responded.

3.      Plaintiffs moved for entry of default against Defaulting Defendants in February 2022.  (ECF No. 36.)  The Court entered default against Defaulting Defendants in March 2022.  (ECF No. 58.)

4.      Pending is Plaintiffs' motion for default judgment against Defaulting Defendants.  (ECF No. 68.)  Defaulting Defendants did not file any responses to the motion or seek to have the entry of default set aside.  Presley and C. Presley Properties jointly filed a brief in response to the motion for default judgment.  (ECF No. 73.)

5.      The Court held a hearing on the motion, at which all parties other than Defaulting Defendants appeared through counsel.  The motion is ripe for determination.

## II. FINDINGS OF FACT[1]

6.      "When default is entered due to a defendant's failure to answer, the substantive allegations contained in plaintiff's complaint are no longer in issue, and for the purposes of entry of default and default judgment, are deemed admitted." *Luke v. Omega Consulting Grp., LC*, 194 N.C. App. 745, 751 (2009).  The facts referred to below are taken from the complaint and are deemed admitted by the Defaulting Defendants for purposes of entering this default judgment.[2]

---

[1] Any findings of fact that are more appropriately deemed conclusions of law are incorporated by reference into the Court's conclusions of law.

[2] To be clear, these facts are not deemed admitted by Presley and C. Presley Properties.

7.  Jacqueline McFee is a former member and employee of CPP. (*See* Compl. ¶¶ 20, 21, 28.)

8.  Savage McFee is a dissolved North Carolina corporation. McFee is Savage McFee's sole shareholder. (*See* Compl. ¶ 2.)

9.  Defaulting Defendants are three associated companies and one individual. CPP is a North Carolina limited liability company, which is now administratively dissolved.[3] Stacks Holding and Sabr Leme are North Carolina corporations, which are also administratively dissolved. Stacks is a resident of Charlotte, North Carolina. Stacks along with Presley served in various leadership capacities at CPP. (*See* Compl. ¶¶ 4, 5, 7, 8.)

10.  In September 2001, McFee started working with CPP as a lead designer. McFee and CPP orally agreed to a compensation structure in which McFee would receive a quarterly royalty on all goods sold, derived from, or created as a result of her intellectual property. (*See* Compl. ¶¶ 21, 25.)

11.  In 2008, McFee's oral employment agreement was memorialized in writing. The written contract included the terms of McFee's royalty payments and granted her a ten percent ownership interest in CPP. In August 2008, McFee transferred her ownership interest to Savage McFee. (*See* Compl. ¶¶ 28, 35.)

12.  During this timeframe, Presley assured McFee that she would own the intellectual property rights to the designs she created and that those rights would be

---

[3] Paragraph 8 of the complaint refers to CPP as a North Carolina corporation, but CPP is in fact an LLC. (*See, e.g.*, Compl. ¶ 34.)

assigned to her when CPP was no longer using the designs. All the designs for CPP's products created by McFee were branded under her name. (*See* Compl. ¶¶ 32, 33.)

13. In 2012, Presley falsely represented to McFee that CPP was worthless and performing poorly. Relying on that representation, McFee agreed to amend her employment agreement. This amendment altered her compensation structure, replacing royalty payments with an annual salary. McFee also agreed to abandon her ownership interest in CPP. Although Presley represented that the owners of CPP were going to forfeit their interests, he did not abandon his ownership interest. Instead, Presley assumed complete ownership of CPP through his shell corporations Sabr Leme and C. Presley Properties. (*See* Compl. ¶¶ 36, 37, 39, 41–43, 47.)

14. In early 2014, Stacks was promoted to serve as CPP's VP of Operations. A year later, he became McFee's boss, and the two clashed repeatedly. This led Presley to fire McFee. After McFee was fired and sometime between 2017 and 2018, Stacks acquired ownership of CPP, became its president, and controlled the company in tandem with Presley. (*See* Compl. ¶¶ 55, 62–64, 66.)

15. When CPP continued using McFee's designs without assigning the intellectual property rights to her, McFee sued CPP in federal court for copyright infringement in April 2016. The court dismissed her copyright claim because McFee did "not have ownership of the intellectual property rights" at issue. *McFee v. CPP Int'l*, 2017 U.S. Dist. LEXIS 21462, at *8 (W.D.N.C. Feb. 15, 2017). So to obtain ownership of those rights, McFee filed an action against CPP in state court in October 2017, asserting claims for breach of contract and violations of N.C.G.S. § 75-1.1. CPP

did not answer or make an appearance in that suit. In February 2020, McFee obtained a default judgment in the state action against CPP, which included an award of damages and an assignment of intellectual property to McFee. (*See* Compl. ¶¶ 68, 69.)

16. While the state action was pending, CPP ceased doing business. One day after that action was filed, CPP sold some of its assets to a company called Pacon. In March 2019, CPP sold the rest of its assets to a company called Bay Sales. Stacks was president of CPP at the time. The sales resulted in millions of dollars of income to CPP. Stacks and Presley "directed a substantial amount of this income to themselves by and through their sham . . . corporations, including Sabr Leme, C. Presley Properties, and Stacks Holding." McFee did not receive any income from the sale of CPP's assets but contends that she should have received at least ten percent. Defaulting Defendants concealed these transfers from McFee and effectuated these transfers with the intent to hinder, delay, and defraud her. (*See* Compl. ¶¶ 70, 73, 75, 78, 94, 131, 133, 134.)

17. Plaintiffs filed this lawsuit in November 2021. Defaulting Defendants were served with properly issued summons and copies of the complaint. The record shows that CPP, Sabr Leme, and Stacks Holding were all served on 22 November 2021, and Stacks was served on 24 November 2021. (*See* CPP Aff. of Service ¶ 4, ECF No. 7; Sabr Leme Aff. of Service, ECF No. 8; Stacks Holding Aff. of Service, ECF No. 10; Stacks Aff. of Service, ECF No. 5.)

## III. CONCLUSIONS OF LAW[4]

### A. Procedural Requirements

18.    "For a default judgment order to be valid, there must be compliance with the procedural requirements set forth in Rule 55 and section 1-75.11 of the North Carolina General Statutes." *KBT Realty Servs. v. AppyCity, LLC*, 2021 NCBC 47, at *9 (N.C. Super. Ct. Aug. 9, 2021).  In short, there must be an entry of default, proof that the summons has been served, and proof of personal jurisdiction over the defendant by affidavit or other evidence.  In addition, the defendant must not be an infant or incompetent person.

19.    These requirements have been met.  Defaulting Defendants are not infants or incompetent, they were properly served with the summons and complaint, and the Court has entered default against them.

20.    In addition, Plaintiffs have offered proof of personal jurisdiction through the verified allegations of the complaint.  (*See* Compl. ¶¶ 3–8; Verification of J. McFee ¶ 3, ECF No. 86.1.)  *See also* N.C.G.S. § 1-75.4(1) (allowing personal jurisdiction over any party who "[i]s a natural person present [or domiciled] within this State" or "a domestic corporation").

### B. Claims for Relief

21.    Even though a defaulting defendant is deemed to have admitted the allegations in the complaint, those allegations are "not sufficient to support a default judgment for plaintiff" if they fail to state a cause of action.  *Brown v. Cavit Scis., Inc.,*

---

[4] Any conclusions of law that are more appropriately deemed findings of fact are incorporated by reference into the Court's findings of fact.

230 N.C. App. 460, 467 (2013). The Court must therefore assess the sufficiency of the allegations, giving them a "liberal construction." *Id.* And "if any portion of the complaint presents facts sufficient to constitute a cause of action, or if facts sufficient for that purpose fairly can be gathered from it, the pleading will stand." *Id*. (cleaned up).

22. **Breach of Fiduciary Duty and Constructive Fraud.** McFee asserts claims for breach of fiduciary duty and constructive fraud against Stacks. The basis for both claims is the same. McFee alleges that Stacks owed her a fiduciary duty because he was an officer of CPP and that Stacks breached that duty by failing to protect her intellectual property rights and to remit a share of income from CPP's asset sales to her. (*See* Compl. ¶¶ 74, 101, 103, 106–07.)

23. A claim for breach of fiduciary duty requires a plaintiff to show that "(1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to the plaintiff." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 339 (2019). Likewise, a claim for constructive fraud requires the existence of a confidential or fiduciary relationship between the parties. *See Forbis v. Neal*, 361 N.C. 519, 528 (2007).

24. The Court concludes that the complaint does not sufficiently allege that a fiduciary relationship existed between Stacks and McFee. As an officer, Stacks owed a fiduciary duty to the company but not to its members, former members, or employees. *See, e.g.*, *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. 469, 474 (2009). McFee

has not alleged any other facts to show that she was in a fiduciary relationship with Stacks.

25. Accordingly, the complaint fails to allege an essential element of the claims for breach of fiduciary duty and constructive fraud. The Court therefore denies Plaintiffs' motion as to these claims.

26. **Conversion.** McFee asserts her claim for conversion against all Defaulting Defendants. She alleges that they converted her intellectual property rights, her ownership interest in CPP, and her share of the proceeds from the sale of CPP's assets.

27. Conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439 (1956) (citation and quotation marks omitted). North Carolina does not recognize a claim for conversion of "intangible interests such as business opportunities and expectancy interests." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 414 (2000).

28. In a previous order, the Court dismissed the same conversion claim against Presley and C. Presley Properties. The Court concluded that McFee's intellectual property rights, her membership interest, and her expectancy interest in proceeds from the sales of CPP's assets are all intangible interests that are not subject to a claim for conversion. *See McFee v. Presley*, 2022 NCBC LEXIS 74, at *13–15 (N.C. Super. Ct. July 11, 2022).

29.     This rationale applies equally to the claim for conversion against Defaulting Defendants.  For that reason, the Court denies Plaintiffs' motion for default judgment as to the conversion claim.

30.     **Section 75-1.1.**  To state a section 75-1.1 claim, a plaintiff must allege that "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656 (2001).  "[A]ny unfair or deceptive conduct contained solely within a single business is not covered by" section 75-1.1. *White v. Thompson*, 364 N.C. 47, 53 (2010); *see also Nobel v. Foxmoor Grp., LLC*, 380 N.C. 116, 120–21 (2022).

31.     Again, in a previous order, the Court dismissed the section 75-1.1 claim against Presley and C. Presley Properties.  The Court concluded that the alleged conduct, even if admitted, relates to internal disputes involving CPP, its officers, and McFee (an employee and minority owner).  Internal disputes of that kind are not in or affecting commerce.

32.     This rationale applies equally to the section 75-1.1 claim against Defaulting Defendants.  Thus, the Court denies Plaintiffs' motion as to that claim.

33.     **Fraudulent Transfer.**  The claim for fraudulent transfer is based on the sales of CPP's assets to Pacon in 2017 and to Bay Sales in 2019.  It appears from the allegations that Plaintiffs challenge these transfers under N.C.G.S. § 39-23.4, which provides as follows:

> (a)     A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the

transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

   (1)   With intent to hinder, delay, or defraud any creditor of the debtor;

   . . . .

(b)   In determining intent under subdivision (a)(1) of this section, consideration may be given, among other factors, to whether:

   (1)   The transfer or obligation was to an insider;

   (2)   The debtor retained possession or control of the property transferred after the transfer;

   (3)   The transfer or obligation was disclosed or concealed;

   (4)   Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

   (5)   The transfer was of substantially all the debtor's assets;

   . . . .

See also *Fischer Inv. Cap., Inc. v. Catawba Dev. Corp.*, 200 N.C. App. 644, 658–59 (2009).

34.   The Court concludes that the complaint alleges facts sufficient to state a claim for fraudulent transfer against CPP. The complaint alleges that McFee was a creditor of CPP; that CPP was on notice of McFee's claim from the filing of McFee's federal action in 2016 and state action in 2017; that CPP transferred substantially all its assets; that CPP and its principals concealed the transfer from McFee; and that Defendants transferred the assets with the intent to hinder, delay, and defraud McFee. (*See* Compl. ¶¶ 126–35.) Taking these allegations as admitted, the Court grants the motion for default judgment against CPP on the fraudulent transfer claim.

35.   Plaintiffs also seek a default judgment against Stacks, Stacks Holding, and Sabr Leme. But there are no allegations that Plaintiffs were creditors of Stacks,

Stacks Holding, or Sabr Leme either before or after the alleged transfers. The complaint alleges only that McFee was a creditor of CPP. As stated above, her claim is based in part on her 2016 and 2017 lawsuit against CPP, in which McFee subsequently obtained a judgment. Additionally, the complaint fails to show any improper transfers made by those defendants, as opposed to CPP. (*See, e.g.*, Compl. ¶ 75.)

36. The Court is not aware of any other potential theory of liability. Even under a liberal reading of the complaint, there are no allegations that CPP was a mere instrumentality or alter ego of any of the Defaulting Defendants. Nor do Plaintiffs ask the Court to pierce CPP's corporate veil.

37. Accordingly, the Court denies the motion for default judgment as to the claim for fraudulent transfer against Stacks, Stacks Holding, and Sabr Leme.[5]

38. **Unjust Enrichment.** Plaintiffs assert a claim for unjust enrichment against all Defaulting Defendants. The basis for the claim is that Defaulting Defendants were unjustly enriched by retaining McFee's intellectual property and her share of the proceeds from the sales of CPP's assets.

39. "The general rule of unjust enrichment is that where services are rendered and expenditures made by one party to or for the benefit of another, without an express contract to pay, the law will imply a promise to pay a fair compensation therefor." *Atl. Coast Line R.R. Co. v. State Highway Comm'n*, 268 N.C. 92, 95–96

---

[5] In their response brief, Presley and C. Presley Properties contend that the statute of repose bars a default judgment for the claim for fraudulent transfer. But the Court may not raise and consider potential defenses that Defaulting Defendants could have but did not assert. *See Unifund CCR, LLC v. Francois,* 260 N.C. App. 433, 446 (2018).

(1966). A claim for unjust enrichment has five elements: (1) "one party must confer a benefit upon the other party"; (2) "the benefit must not have been conferred officiously"; (3) "the benefit must not be gratuitous"; (4) "the benefit must be measurable"; and (5) "the defendant must have consciously accepted the benefit." *JPMorgan Chase Bank, N.A. v. Browning*, 230 N.C. App. 537, 541–42 (2013) (citation and quotation marks omitted).

40. The complaint sufficiently alleges a claim for unjust enrichment. The admitted allegations show that McFee conferred her intellectual property and her share of the asset sale proceeds on Defaulting Defendants, that she did not confer those benefits officiously, that they were not gratuitous, and that Defaulting Defendants consciously accepted them. The complaint further alleges that the sale of CPP's assets "resulted in millions of dollars of income to CPP" and that the conferred benefits are measurable: "10% of the net sale proceeds and the designs [McFee] created while at CPP." (Compl. ¶¶ 94, 142–46.)

41. The allegations concerning McFee's employment agreement do not defeat the claim for unjust enrichment. The usual rule is that "[i]f there is a contract between the parties, the contract governs the claim and the law will not imply a contract." *Se. Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330–31 (2002). Here, though, it is deemed admitted by Defaulting Defendants that McFee was induced by fraud to amend her employment agreement and to abandon her membership interest in CPP.

42. In addition, it is sufficient that the complaint alleges that McFee conferred a direct benefit on CPP and an indirect benefit on Stacks, Stacks Holding, and Sabr Leme. (*See* Compl. ¶ 94 (alleging that Stacks "directed a substantial amount of this income" from the asset sales to himself "by and through [his] sham and shell corporations, including Sabr Leme . . . and Stacks Holding").) "[I]t is sufficient for a plaintiff to prove that it has conferred some benefit on the defendant, without regard to the directness of the transaction." *Bandy v. Gibson*, 2017 NCBC LEXIS 66, at *15 (N.C. Super. Ct. July 26, 2017) (citation and quotation marks omitted); *see also Lau v. Constable*, 2017 NCBC LEXIS 10, at *14–16 (N.C Super. Ct. Feb. 7, 2017).

43. Therefore, the Court grants Plaintiffs' motion for default judgment as to the claim for unjust enrichment.[6]

## IV. CONCLUSION

44. For all these reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' motion for default judgment. The Court **ORDERS** as follows.

    a. The motion for default judgment against CPP is **GRANTED** as to the claims for fraudulent transfer and unjust enrichment. The motion is **DENIED** as to the claims against CPP for conversion and violations of section 75-1.1.

---

[6] In their response brief, Presley and C. Presley Properties worry that entry of default judgment may prejudice their own right to assert a defense, partly because the complaint includes allegations that some defendants are alter egos of others. This does not appear to be a valid concern. Because Plaintiffs have alleged joint and several liability, "the matter can be decided individually against one defendant without implicating the liability of other defendants." *Harlow v. Voyager Commc'ns V*, 348 N.C. 568, 571 (1998).

b. The motion for default judgment against Stacks is **GRANTED** as to the claim for unjust enrichment. The motion is **DENIED** as to the claims against Stacks for breach of fiduciary duty, constructive fraud, conversion, fraudulent transfer, and violations of section 75-1.1.

c. The motion for default judgment against Stacks Holding and Sabr Leme is **GRANTED** as to the claim for unjust enrichment. The motion is **DENIED** as to the claims against Stacks Holding and Sabr Leme for fraudulent transfer, conversion, and violations of section 75-1.1.

d. The costs of this action are taxed to Defaulting Defendants.

45. Finally, Plaintiffs have asked for an evidentiary hearing regarding damages. The Court **GRANTS** that request, **DEFERS** consideration of damages, and will schedule an evidentiary hearing by separate order at a later time.

**SO ORDERED**, this the 29th day of November, 2022.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases